RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0092p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

HOLLAND HARDAWAY,

          *Petitioner-Appellant,*

    *v.*

KENNY ROBINSON,

          *Respondent-Appellee.*

No. 08-1156

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-70230—George C. Steeh, District Judge.

Argued: November 30, 2010

Decided and Filed: April 14, 2011

Before: BATCHELDER, Chief Judge; ROGERS and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** B. Kurt Copper II, JONES DAY, Columbus, Ohio, for Appellant. John S. Pallas, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** B. Kurt Copper II, Chad A. Readler, Erik J. Clark, JONES DAY, Columbus, Ohio, for Appellant. Brad H. Beaver, B. Eric Restuccia, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Holland Hardaway, Detroit, Michigan, pro se.

_____

## OPINION

_____

ROGERS, Circuit Judge. Holland Hardaway appeals the denial of a habeas petition challenging his 1994 murder conviction on two grounds. Hardaway's first argument, that his due process rights were violated when the trial judge gave the jury a coercive *Allen* instruction, lacks merit. However, Hardaway is entitled to relief on his

1

second ground, because the ineffective assistance of appellate counsel—who failed to file an appellate brief and thereby deprived Hardaway of a direct appeal—was not cured by the ability to appeal from later state collateral proceedings.

Hardaway shot and killed Norman Spruiel, a Detroit police officer, on October 2, 1993. Hardaway's defense was that he did not know Spruiel was a police officer, and that he returned fire in self-defense. Officer Spruiel and his partner had been working undercover, investigating a murder near a body shop where Hardaway was employed. Believing the two men were about to rob the repair shop, Hardaway went home, retrieved a rifle, and returned to the shop. Shots were fired, and Officer Spruiel was fatally wounded. Both sides claimed the other shot first.

Hardaway was charged with three counts—murder, assault with intent to murder, and possession of a firearm during the commission of a felony—and tried on May 9-18, 1994. On the second day of deliberations, the jury sent a note to the trial judge stating that it was "[h]opelessly deadlocked on first and second counts." The trial court responded with the following supplemental instruction:

> Now, you have returned from deliberations indicating that you believe you cannot reach a verdict. I am going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion, you will be able to reach a verdict.
>
> As you deliberate, please keep in mind the guidelines I gave you earlier. Remember, it is your duty to consult with your fellow jurors and try to reach agreement if you can do so without violating your own judgment. To return a verdict, you must all agree and the verdict must represent the judgment of each of you.
>
> As you deliberate, you should carefully and seriously consider the views of your fellow jurors. Talk things over in a spirit of fairness and frankness. It's natural there will be differences of opinion. You should each not only express your opinion but also give the facts and the reasons on which you base it. By reasoning the matter out, jurors can often reach agreement.
>
> And when you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong. However, none of you should give up your honest beliefs about

the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement.

So once again, ladies and gentlemen, this was a long trial, we were in trial all week and you've got plenty of time. Take your time. We are going to break now for 15 – let you have a 15-minute break and then you will return to the courtroom, to the jury room and *you will deliberate for as long as necessary for you to reach agreement.*

R. 17 at 986-87 (emphasis added). Defense counsel's objection to the supplemental charge as coercive was overruled.

On the third day of deliberations, the jury indicated that it was "[s]till hopelessly deadlocked on Counts 1 and 2." Over defense counsel's objection, the trial judge again rejected the jury's conclusion, sent the jurors to lunch, and informed them that they would resume deliberations when they returned. On the fourth day of deliberations, the jury reached a verdict, convicting Hardaway of second-degree murder and possession of a firearm during the commission of a felony, but acquitting him of assault with intent to murder. The trial court sentenced Hardaway as a habitual offender to consecutive terms of 40-80 years in prison for the murder conviction and five years in prison for the felony firearm conviction.

On June 30, 1994, Hardaway filed a timely claim of appeal through his attorney, Paul Curtis. However, the Michigan Court of Appeals dismissed the appeal on August 18, 1995, because Curtis failed to file an appellate brief. Hardaway filed a delayed application for leave to appeal through different appellate counsel, which was denied as untimely. The Michigan Supreme Court denied leave to appeal the state appellate court's decision, but suggested that Hardaway file a motion for relief from judgment in the trial court and argue that his first appellate counsel's neglect of the appeal of right established cause for Hardaway's failure to raise his claims on direct appeal.

Hardaway did exactly that. As relevant to this appeal, Hardaway's motion for state post-conviction relief asserted claims of jury coercion, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. The motion was denied on August 4, 1999, in an opinion that reached the merits of Hardaway's jury coercion and

ineffective assistance of trial counsel claims, but did not address the merits of Hardaway's ineffective assistance of appellate counsel claim. The Michigan Court of Appeals upheld the district court's ruling in an order stating, "the delayed application for leave to appeal is denied, for lack of merit in the grounds presented." The Michigan Supreme Court, also in a one-sentence order, declined review.

Hardaway next sought federal habeas relief. His petition was initially dismissed as time-barred, and both the district court and this court denied a certificate of appealability. Hardaway then filed a Rule 60(b) motion to vacate the judgment and reinstate his petition, arguing that the prior dismissal mistakenly used the wrong filing date in concluding that his petition was time-barred. The district court granted the motion on March 11, 2005, and then denied Hardaway's claims on the merits. The district court held that the trial court's supplemental instruction on the whole was not coercive, and that Hardaway was not prejudiced by appellate counsel's ineffective assistance because Michigan's collateral post-conviction procedure was an adequate substitute for his direct appeal. Hardaway now appeals the district court's denial of habeas relief.

Although the failure of Hardaway's counsel to effect an appeal requires reversal, as explained below, Hardaway is not entitled to habeas relief on his jury coercion claim. This is because, in light of the entire supplemental instruction, the Michigan trial court's determination that the *Allen* charge was not coercive is not an unreasonable application of federal law.

The Michigan trial court on collateral review denied relief on Hardaway's jury coercion claim, stating, "[i]n this case, the overall effect of the comment was not coercive, rather it stressed the need of the jurors to seriously engage in deliberations." Even if we disagreed with that result, the state court's determination is entitled to deference under the Antiterrorism and Effective Death Penalty Act (AEDPA), which prohibits federal courts from granting habeas relief unless the state court's adjudication of a claim "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

The state court's determination was a reasonable application of federal law. As the district court below reasoned, although the trial judge's comment was ill-advised, the supplemental charge included several remarks that were sufficient to mitigate any coercive effect the comment might have had. For example, the trial judge also instructed the jurors to "try to reach agreement if you can do so without violating your own judgment." And the court emphasized that "none of you should give up your honest beliefs about the weight or effect of the evidence" for the sake of reaching agreement.

The Supreme Court has long maintained that a trial judge may properly encourage a deadlocked jury to continue deliberating by issuing a supplemental instruction that urges the jury to reach a unanimous verdict. *Allen v. United States*, 164 U.S. 492, 501-02 (1896). These so-called *Allen* charges serve the important purpose of avoiding the social costs of a retrial, including the time, expense, and potential loss of evidence that a new trial would entail. *See Lowenfield v. Phelps*, 484 U.S. 231, 237-38 (1988); *id.* at 252 (Marshall, J., dissenting). This court has also generally upheld "verdict-urging" charges, even when they contain flaws, *e.g.*, *Williams v. Parke*, 741 F.2d 847, 850 (6th Cir. 1984), and despite "troubling" references to trial expense and effort, *e.g.*, *United States v. Clinton*, 338 F.3d 483, 490 (6th Cir. 2003).

The Supreme Court's decision in *Jenkins v. United States*, 380 U.S. 445, 446 (1965), does not require habeas relief in this case. It is true that, taken in isolation, the trial court's statement that "you will deliberate for as long as necessary for you to reach agreement" is similar to the mandatory language held to be coercive in *Jenkins*. There the trial judge told a deadlocked jury, "[y]ou have got to reach a decision in this case," and the Supreme Court ordered a new trial. *See id.* The Court explained that "the principle that jurors may not be coerced into surrendering views conscientiously held is so clear as to require no elaboration." *Id.* But the Court carefully refrained from stating a categorical rule. Instead, it held that "[u]pon review of the record . . . in its context and under all the circumstances the judge's statement had the coercive effect attributed to it."

*Id.* The state court in this case, undertaking a similar review of the record, in context and under the circumstances, could come to a contrary conclusion.

Our finding that the Michigan trial court did not unreasonably apply federal law in rejecting Hardaway's *Allen* charge claim on post-conviction review does not foreclose any state law challenges that could be raised on direct appeal to the Michigan Court of Appeals. Nor does our decision necessarily foreclose a *federal* law challenge to the *Allen* charge on direct appeal, because we hold only that the state trial court's application of federal law was not unreasonable.

Turning then to petitioner's second ground for habeas relief, Hardaway was prejudiced by his appellate counsel's deficient performance, because the failure to file an appellate brief rendered Hardaway's direct appeal "entirely nonexistent." *See Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). In such circumstances, prejudice is presumed under *Flores-Ortega*, and Michigan's collateral post-conviction proceeding is not an adequate substitute for a direct appeal of right.

As the district court held below, Hardaway's appellate counsel's failure to file a timely appellate brief constituted deficient performance under the first prong of *Strickland v. Washington*, 466 U.S. 668 (1984), and the state does not argue to the contrary. *Cf. Deitz v. Money*, 391 F.3d 804, 810 (6th Cir. 2004); *White v. Schotten*, 201 F.3d 743, 752 (6th Cir. 2000).

Moreover, Hardaway was prejudiced by counsel's deficient performance because the deficiency "deprived [Hardaway] of the appellate proceeding altogether." *See Flores-Ortega*, 528 U.S. at 483-84. In *Flores-Ortega*, the Supreme Court held that the defendant was entitled to a presumption of prejudice "with no further showing . . . of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding . . . entirely nonexistent." *Id.* at 484. Similarly, in *Rodriquez v. United States*, 395 U.S. 327, 330 (1969), the Court held that counsel's failure to file a notice of appeal entitled the defendant to a new appeal without any further showing.

The district court ruled below that Hardaway's collateral motion for relief from judgment—which was addressed on the merits of Hardaway's claims—along with appellate review of the denial of such collateral relief, was an adequate substitute for his direct appeal.  We do not reject the idea that a state court could correct for an unconstitutional denial of effective counsel on direct appeal by providing for the constitutional equivalent of a new direct appeal.  The appeal from the denial of collateral review in this case, however, could not reasonably be deemed a sufficient substitute.[1]

The strongest argument that there was a sufficient substitute for a counseled direct appeal in this case is that it was provided by the appeal from the merits-based denial of collateral review.  But appeal from the denial of collateral relief in Michigan is different from a direct appeal from a conviction.  A defendant must apply for leave to appeal from the denial of a motion for relief from judgment.  *See* Mich. Ct. R. 6.509.  The disposition of an application for leave to appeal is within the discretion of the Michigan Court of Appeals, and is a preliminary step to having the case proceed as an appeal of right.  *See* Mich. Ct. R. 7.205(D)(2), (3).  The Court of Appeals may respond to a leave application in several different ways: it "may grant or deny the application; enter a final decision; grant other relief; request additional material from the record; or require a concise statement of proceedings and facts from the court . . . whose order is being appealed." *Id.*  Only if the leave application is granted will the case proceed as an appeal of right.  *See* Mich. Ct. R. 7.205(D)(3).

Thus, when the Michigan Court of Appeals issues a one-sentence order denying leave to appeal "for lack of merit in the grounds presented," we have no way of knowing how the state appellate court resolved the various issues presented by the application.

---

[1] This conclusion makes it unnecessary for us to decide whether AEDPA deference applies to this inquiry.  The Michigan courts did not address the ineffective-assistance-of-appellate-counsel prejudice issue in so many words.  However, the Michigan Supreme Court on direct review suggested that ineffective assistance of appellate counsel would serve as cause to permit the state trial court on collateral review to reach the merits.  R. 21 at 1 (citing Mich Ct. R. 6.508(D)(3)(a)).  When the state trial court did just that, a generous reading would be that the state trial court on collateral review was itself providing a remedy for the ineffective appellate assistance that all assumed occurred.  Presumably the court was of the view that providing such a remedy, along with the possibility of appellate review of its own decision, was sufficient to provide what was constitutionally required.  In light of the analysis below, however, such a conclusion would not have been a reasonable one, especially since part of our analysis relies on the summary nature of the Michigan appellate court's ruling.  When the state trial court ruled, it of course did not know what the Michigan appellate court was going to do on review of its very decision.

There is no way to tell whether the state court simply declined to hear the appeal because of delay or other procedural defect, or whether the court's disposition was a summary affirmance on the merits. Furthermore, unlike the appellant in an appeal of right, the applicant denied leave to appeal does not receive the benefit of oral argument. *See* Mich. Ct. R. 7.205(D)(1). Nor does the defendant have a right to appointed counsel on post-conviction review, although Hardaway was represented by counsel on his collateral appeal in this case. *See People v. Walters*, 624 N.W.2d 922, 923-24 (Mich. 2001). Taken together, these differences render Michigan's collateral post-conviction proceeding too unlike an appeal of right to constitute a sufficient substitute.

The Supreme Court emphasized the importance of the first level of direct review in *Douglas v. California*, 372 U.S. 353, 356-57 (1963), explaining that such an appeal entails adjudication on the merits, and that it differs from subsequent appellate stages "at which the claims have once been presented by a lawyer and passed upon by an appellate court." Likewise in *Halbert v. Michigan*, 545 U.S. 605, 618 (2005), the Court distinguished first-tier direct review in the Michigan Court of Appeals from review in the Michigan Supreme Court, noting that the purpose of first-tier appellate review is to correct errors in the lower court, while the Michigan Supreme Court sits primarily to decide matters of "significant public interest." *See* Mich. Ct. R. 7.302(B)(2). The policies underlying these distinctions between first-tier and second-tier appeals do not support substituting a discretionary appeal—with tougher procedural hurdles—in place of an appeal of right. This is particularly true where these additional obstacles would be imposed on defendants simply because counsel failed entirely to perfect a direct appeal.

We reached a similar conclusion in *Dorn v. Lafler*, 601 F.3d 439, 445 (6th Cir. 2010), a case that involved a right of access claim rather than an ineffective assistance claim. The petitioner in *Dorn* argued that the prison's mishandling of his appeal papers caused him to lose his appeal of right, violating his Fourteenth Amendment right of access to the courts. *Id.* at 443. We applied *Flores-Ortega* in holding that the petitioner was entitled to a presumption of prejudice. *Id.* at 445. We also rejected the argument that a delayed application for leave to appeal was an adequate substitute for a direct

appeal, because of the additional hurdles that those collateral proceedings impose on prisoners. *Id.*

Our decision today does not address the situation that would have arisen had the Michigan Court of Appeals granted rather than denied the application for leave to appeal, insured that petitioner had a right to appellate counsel, permitted the case to proceed as an appeal of right under Mich. Ct. R. 7.205(D)(3), and disposed of the merits to the same extent that it would have on a direct appeal.  That is not the case before us.

The district court below relied on *Abela v. Martin*, 380 F.3d 915, 923 (6th Cir. 2004), in concluding that the Michigan Court of Appeals' one-sentence denial of relief "for lack of merit in the grounds presented" was a merits determination, and therefore that Hardaway's post-appeal review was the functional equivalent of a direct appeal. But *Abela* stands for the proposition that a dismissal "for lack of merit in the grounds presented" does not unambiguously invoke a procedural bar, not that the same one-sentence order is unambiguously a merits decision, much less an "adequate substitute" for a direct appeal.  *See id.* at 922-24; *Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010) (en banc).  These cases address the distinction between an order that enforces a procedural rule barring the claim and an order that rejects the claim on its merits, not the issue of whether an unexplained order reflects the result of a proceeding that is an adequate substitute for a direct appeal.

Respondent argues that there is no reasonable probability that the result of Hardaway's direct appeal would have been different if counsel had filed a timely appellate brief.  Under *Flores-Ortega*, that is beside the point.  The purpose of presuming prejudice is to eliminate the need for a prisoner to make any further showing beyond establishing that the lost proceeding was "entirely nonexistent." *See Flores-Ortega*, 528 U.S. at 483-84; *Rodriquez*, 395 U.S. at 330.

For these reasons, we reverse the denial of habeas relief and remand to the district court with instructions to issue a conditional writ directing the state to afford Hardaway a direct appeal.