**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0245n.06

**No. 11-1893**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
***Mar 08, 2013***
DEBORAH S. HUNT, Clerk

CHRISTOPHER PHELPS,

     Petitioner-Appellant,

v.

WILLIE O. SMITH, WARDEN,

     Respondent-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

_____ /

BEFORE:    CLAY, COOK, and ROTH,[*] Circuit Judges.

    **CLAY, Circuit Judge.** Petitioner Christopher Phelps was convicted of three counts of

Criminal Sexual Conduct in the Second Degree, Mich. Comp. Laws § 750.520c(1)(b), by a jury in

Michigan state court. He now brings this petition for a writ of habeas corpus under 28 U.S.C. §

2254, claiming that the trial court's *ex parte* communication with the jury violated his right to an

uncoerced jury. The district court denied the petition, but granted a certificate of appealability on

that question. For the following reasons, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

    A.    **Procedural History**

---

[*]The Honorable Jane R. Roth, Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting
by designation.

No. 11-1893

Defendant Christopher Phelps was convicted by jury, in Oakland County Circuit Court, on March 25, 2005, of three counts of Criminal Sexual Conduct in the Second Degree, Mich. Comp. Laws § 750.520c(1)(b). He was simultaneously acquitted of three counts of Criminal Sexual Conduct in the First Degree, Mich. Comp. Laws § 750.520b(1)(b).[1] Following a motion for a new trial, which was denied following a hearing on April 20, 2005, Defendant was sentenced, on April 22, 2005, to concurrent terms of three-and-one-half to fifteen years in prison. Respondent Willie Smith is the warden of Carson City Correctional Facility, where Defendant is serving his sentence.

Defendant appealed his conviction to the Michigan Court of Appeals, but the appeal was denied, and the Michigan Supreme Court refused to review the conviction. He brought a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan on July 12, 2011. Defendant's two claims for habeas relief were that the court's *ex parte* communication with the jury was unduly coercive and that the state court violated his right to present a defense when it refused to permit him to introduce a prior sworn statement from a deceased witness, his wife (the complainant's mother). The district court denied Defendant's petition, but granted a certificate of appealability on the question of whether the state court's *ex parte* communication with the jury was unduly coercive. We took jurisdiction pursuant to 28 U.S.C. § 2253(a), but denied Defendant's motion to expand the certificate of appealability.

**B.     Facts**

---

[1]A charge of first degree criminal sexual conduct requires sexual penetration, while a second degree charge of criminal sexual conduct requires only that a "person engage[] in sexual contact with another person . . . [who] is at least 13 but less than 16 years of age and . . . [t]he actor is a member of the same household as the victim." Mich. Comp. Laws § 750.520(c)(1)(b)(i).

Defendant was married to Shari Phelps. They lived in Southfield, Michigan, with Amber Garant, Shari's daughter. In 2003, Shari was in a car accident and was paralyzed from the chest down. In 2004, Amber, along with her boyfriend, David Torode, went to a Southfield Police station and met with Detective David Palmer. They alleged that since April 13, 2003, when Amber was 15, Defendant had molested her. In a second statement, Amber alleged that Defendant had molested her two-and-a-half-years earlier. She also alleged that Defendant had taken a series of lascivious photographs of her with her friend, Nicole Bowersocks. Amber and David did not tell Palmer that they had a sexual relationship. David also brought a memory stick from a digital camera to the police, which contained copies of the photographs.

Relying on Amber's statements, the police executed a search warrant at Defendant's home and arrested him. The officers found pornography in Defendant's bedroom, as well as a vibrator and provocative clothing in Amber's room. After reading him the *Miranda* warnings, two police detectives interrogated Defendant for three hours. Defendant made no admissions until one-and-a-half hours had passed, but then confessed that he had taken the photographs, and further admitted to inappropriate sexual contact with Amber.

At trial, Sergeant Shelide testified that Defendant had admitted to taking the photographs and to sexual activities with Defendant. Detective Palmer corroborated this testimony, and added that Amber and Torode had not disclosed their own relationship to the police. Bowersocks testified that Defendant had taken lascivious photos of her and Amber, in sexually revealing clothes. Amber testified that Defendant had purchased outfits and a vibrator for her, and had photographed her with

her friend Nicole. She further testified that sometime after her mother had become paralyzed in a car accident, Defendant had begun touching her sexually.

The defense called a witness, a retired police officer, who testified as to the nature of police interrogations. Luke Devroy, who had lived in Defendant's home along with Torode, testified that he had not seen anything suspicious about Defendant's relationship with Amber, and that Defendant had asked him to keep an eye on David and Amber. Defendant testified on his own behalf, and denied the allegations. He also asserted that Amber was lying, and that the police had coerced him into a confession through psychological trickery. The defense also sought to introduce prior sworn testimony of Shari Phelps, who had died in January 2006. Previously, at a hearing in probate court, Shari had testified that Amber had previously lied about abuse from Defendant. The court refused to admit the statement into evidence.

During *voir dire*, the trial court told potential jurors that deliberations could be as short as five minutes or as long as five days. The judge also told the jurors that he had seen both, and neither was better or worse. (R. 10, Opinion, July 12, 2011, at 14.) The jury began its deliberations on Wednesday, March 23, 2005. The trial court reiterated its instruction that the deliberations could be very quick or very long. On Thursday, March 24, 2005, at 2:30 p.m., the jury sent a note to the judge, stating that they had not reached a decision, and were unsure how to proceed. The judge, without counsel or Defendant present, told them "Keep deliberating, you have days to go." (*Id.* at 15.) The next day, the court informed the prosecution and Defendant of the *ex parte* communication. Defense counsel moved for a mistrial, and requested, in the alternative, that the court read an *Allen* charge to the jury. The court denied both requests, but did inform the jury that it could adjourn

deliberations early that day, if it chose to, so that jurors could observe Good Friday. The jurors

continued deliberating, and at 3:48 p.m., they returned a verdict convicting Defendant of the three

counts of Criminal Sexual Conduct in the Second Degree while acquitting him of the three first-

degree counts.

## ANALYSIS

### A.    Standard of Review

Where a district court has denied a habeas petition, and issued a certificate of appealability,

"we review the district court's legal conclusions *de novo* and its factual findings for clear error."

*Hanna v. Ishee*, 694 F.3d 596, 605 (6th Cir. 2012) (citing *Smith v. Mitchell*, 567 F.3d 246, 255 (6th

Cir. 2009)).  The district court's findings of fact are clearly erroneous when "we are left with the

definite and firm conviction that a mistake has been committed." *United States v. Canipe*, 569 F.3d

597, 600 (6th Cir. 2009) (citing *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007)).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court

may not grant a writ of habeas corpus with respect to any claim adjudicated on the merits in state

court[2] unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

---

[2]The government does not contest the district court's ruling that Defendant's claims are exhausted.

28 U.S.C. § 2254(d). A federal court may not issue the writ "simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "[C]learly established federal law, as determined by the Supreme Court of the United States" refers to the holdings, rather than dicta, of the decisions of the Supreme Court. *Howes v. Fields*, --- U.S. ---, 132 S. Ct 1181, 1187 (2012) (citing *Williams*, 529 U.S. at 362).

A decision is "contrary to" clearly established federal law where "the state court arrives at a conclusion opposite to that reached by this Court on a question of law . . . [or] confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite] result." *Williams*, 529 U.S. at 405. A decision involves an unreasonable application "if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 412–13. Furthermore, an unreasonable application must be distinguished from an incorrect application. *Harrington v. Richter,* --- U.S. ---, 131 S. Ct. 770, 785 (2011) (quoting *Williams*, 529 U.S. at 410). A state court decision which is merely incorrect, rather than unreasonable, is still entitled to deference by a federal court in a habeas proceeding. *Id.* "Our task is not to determine whether the state court reached the correct outcome, but rather to determine whether the court's application of clearly established federal law is objectively unreasonable—'a substantially higher threshold.'" *Hereford v. Warren*, 536 F.3d 523, 527 (6th Cir. 2008) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007)). As a result, the more general the rule, the greater the leeway accorded to a state court's decision under federal habeas review. *Harrington*, 131 S. Ct. at 786.

Under AEDPA, this Court examines the last state court decision on the merits. *Jackson v. Bradshaw*, 681 F.3d 753, 760 (6th Cir. 2012). In this case, that decision is the judgment of the Michigan Court of Appeals, *People v. Phelps*, No. 262367, 2006 WL 3498424, (Mich. Ct. App. 2006).

**B.      The Right to an Uncoerced Jury Verdict**

"Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfeld v. Phelps*, 484 U.S. 231, 241 (1988). "The due-process 'principle that jurors may not be coerced into surrendering views conscientiously held is so clear as to require no elaboration.'" *Lyell v. Renico*, 470 F.3d 1177, 1182 (6th Cir. 2006) (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam)). Nevertheless, the use of a supplemental jury charge has been explicitly sanctioned by courts for over a century. In *Allen v. United States*, 164 U.S. 492, 501 (1896), the Supreme Court upheld a verdict where the court had given a lengthy instruction to a deadlocked jury. In that case, the court held that:

> While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves.

*Id.* Since that decision, every circuit has approved at least some supplemental charge. *Lowenfeld*, 484 U.S. at 238 n.1 (collecting cases). Whether a judge's statement to a jury is coercive is considered "in its context and under all the circumstances." *Jenkins* 380 U.S. at 446; *accord Lowenfeld*, 484 U.S. at 237.

Because of the fact-intensive nature of the inquiry into jury coercion, federal habeas review is particularly deferential to the findings of the state court in this area of law. In *Early v. Packer*, 537

U.S. 3 (2002), the Supreme Court approved a state court decision that held that there was no coercion where—after twenty-eight hours of deliberations—the judge read aloud a note from the jury identifying the sole hold-out, in which the other jurors questioned her capacity for reason. *Id.* at 4–6. In that decision, the Supreme Court concluded its decision by stating that "[e]ven if we agreed . . . that there was jury coercion, it is at least reasonable to conclude that there was not, which means that the state court's determination to that effect must stand." *Id.* at 11. In *Hardaway v. Robinson*, 655 F.3d 445 (6th Cir. 2011), this Court held that even where "the trial court's statement that 'you will deliberate for as long as necessary'" was "similar to the mandatory language held to be coercive in *Jenkins*," there was no unreasonable application of federal law. *Id.* at 448.

In addition, even in some of the circumstances in which the United States Supreme Court has found jury coercion based on a judge's instructions, it has not created "clearly established law" that is applicable to state law proceedings. The results in *Jenkins* and *Gypsum* were both based on the Court's supervisory power, rather than on constitutional law.[3] *Early*, 537 U.S. at 10; *see generally United States v. U.S. Gypsum Co.*, 438 U.S. 422 (1978). *See also Wong v. Smith*, 131 S. Ct. 10, 11 (2010) ("The clearly established law relevant to this case is sparse.") (Alito, J., dissenting from a denial of a writ of certiorari.)

---

[3]In *Jenkins*, the Supreme Court reversed and remanded an armed robbery conviction in the United States District Court for the District of Columbia, where the district court judge told the jury that "[y]ou have got to reach a decision in this case." *Jenkins*, 380 U.S. at 446. The case never mentioned the Due Process Clause. *See id.* In *United States v. U.S. Gypsum Co.*, manufacturers were convicted in federal court under the Sherman Act, and the Supreme Court found that a judge's *ex parte* meeting alone with the foreman of the jury, in which the discussion turned into a substantive supplemental instruction, was sufficient grounds for a Court of Appeals to overturn a verdict. *Gypsum*, 438 U.S. at 461–62. The court noted, however, that the fact of the meeting alone was not sufficient. *Id.* at 462. As in *Jenkins*, there was no discussion of the Due Process Clause. *See id.*

While federal review of this area is deferential, certain factors tend to increase the likelihood that a particular instruction was coercive. In its supervisory capacity, the Supreme Court has held that a federal court of appeals should overturn a verdict if it was reached after the trial court polled the jury. *Brasfield v. United States*, 272 U.S. 448, 450 (1926); *see also Lyell*, 470 F.3d at 1190 (Clay, J., concurring). While this *per se* rule has not been extended to habeas review of state court convictions, *see, e.g. Lowenfeld*, 484 U.S. at 238 n.3; *Lyell* at 1190, the Supreme Court has suggested that combinations of polling with other circumstances might constitute coercion. *Lowenfeld* at 241; *Lyell*, 470 F.3d at 1182–83. If the court has inquired into the numerical division of the jurors, and received an answer, it is more likely that there was error requiring reversal. *See Lyell*, 470 F.3d at 1182–83 (discussing *Brasfield v. United States*, 272 U.S. 448 (1926)). But if the court has not inquired as to which side may prevail in the voting, even polling the jury may not amount to coercion. *See, e.g., Early*, 537 U.S. at 6.

In this case, the state court's finding that the instruction was not coercive was not an unreasonable one. The court, in essence, repeated an unobjectionable part of its instructions which had been given before the jury began deliberations. Furthermore, it did not poll the jury or inquire into its numerical division. And whatever evidence could point to coercion, such as returning the next day with a mixed verdict, could also be reasonably interpreted as a lack of coercion. For example, while one might make the conjecture that the jurors, feeling pressure to return a verdict, compromised with one another and returned a verdict convicting on only the second-degree charges, one could also see this as evidence that no jurors felt pressure to convict on the higher counts. Finally, while the instructions were given *ex parte*, there is no evidence that the jury felt pressured,

or reacted to the absence of counsel in any way, especially because the instruction given was a repetition of earlier instructions.[4]  Accordingly, the state court's decision was reasonable and this Court will not disturb it.

## CONCLUSION

For the foregoing reasons, the decision of the district court is **AFFIRMED**.

---

[4]While the instruction itself was not coercive, there may be an argument that the fact that it was *ex parte* is sufficient to render the verdict suspect.  Defendant—and the district court—raise this issue by framing it only as a factor that could lead this Court to consider the instruction itself coercive.  But in certain circumstances, the very fact of an *ex parte* instruction may be enough to render a verdict constitutionally defective.  *See, e.g.*, *Tate v. Morris*, 909 F.2d 1485, at *3 (6th Cir. 1990) (table).  However, and for this Defendant, critically, there is a distinction between the right to be present at proceedings as cognizable under the Sixth Amendment and the right as cognizable under the Fifth Amendment.

While the Supreme Court "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984), it has only done so when the right implicated was found in the Sixth Amendment. This is because "[t]he constitutional right to presence is rooted to a large extent in the confrontation clause of the Sixth Amendment." *United States v. Gagnon*, 470 U.S. 522, 526 (1985).  So while there are cases in which the defendant's absence during a particular part of the proceedings is cognizable under the Sixth Amendment, *id.*, violations of that right are subject to harmless error analysis. *See Tate*, 909 F.2d at *3–4; *see also Rushen v. Spain*, 464 U.S. 114, 140–41 (1983).  If examined this way, this instruction was harmless error, as it duplicated an instruction already approved of by defense counsel.