**NOT RECOMMENDED FOR PUBLICATION**
File Name: 16a0341n.06

**No. 15-1825**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DENARD PETERSON, | ) | |
| | ) | **FILED** |
| Petitioner-Appellant, | ) | Jul 06, 2016 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| PAUL KLEE, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | |

**BEFORE: MERRITT, BATCHELDER, and GILMAN, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** The story behind this appeal begins in October 2000, when Petitioner Denard Peterson broke into the Detroit home of an elderly woman, raped her, ransacked her house, and stole some of her possessions. The victim identified Peterson out of a live line up, and he gave a full confession. He was then charged in Michigan state court with first-degree criminal sexual conduct and first-degree home invasion. He also faced a sentencing enhancement as a habitual offender.

Peterson suffers from very severe schizophrenia, but he was nevertheless found competent to stand trial. Following this determination, he pled *nolo contendere* to the sexual conduct charge. In exchange, the state dismissed the home-invasion count and agreed to not

proceed with the habitual-offender sentencing enhancement. By all accounts, Peterson appeared to be competent at the plea hearing.

At the sentencing hearing two weeks later, however, he gave a rambling and utterly incomprehensible allocution. After sitting through several minutes of what Peterson's counsel in this appeal aptly described as "word salad," the trial court thanked Peterson and sentenced him to "a minimum of 285 months and a maximum of 40 years in the Michigan Department of Corrections."

Peterson then filed an untimely "notice of application for leave to appeal and request for appointment of attorney."[1] The trial court excused the notice's untimeliness and granted the request for counsel. The appointed attorney then sent an associate to meet with Peterson to talk about his options on appeal. At the meeting it became apparent that Peterson wanted his plea withdrawn because he erroneously believed that he had pled guilty to both counts and had received the sentencing enhancement.

His appellate attorney filed a motion with the trial court to have Peterson's competency evaluated. Appellate counsel was particularly concerned that Peterson did not understand that, if he succeeded in withdrawing his plea, he would likely be convicted of both charges and would in all likelihood face a much longer sentence. The trial court granted the motion and ordered that Peterson be evaluated. The examining doctor opined that Peterson was a paranoid schizophrenic, was psychotic and delusional, and was unable to understand what was at stake in his appeal. Peterson's appellate attorney then filed a motion with the trial court asking that Peterson be committed to a psychiatric treatment facility to restore his competency so that he

---

[1] Michigan allows for appeals as of right only from trial convictions—appeals from a plea are discretionary with the Michigan Court of Appeals. *See* Mich. Comp. Laws § 770.3 (2000).

could go forward with the appeal or, alternatively, that the court provide guidance on how to proceed.

The trial court did neither. Instead, it ordered "that this appeal be dismissed subject to the appellant's right to seek review pursuant to MCR 6.500 [Michigan's state collateral attack regime] should he regain his competence." R. 11-5 at 132 (emphasis omitted and capitalization changed). It is not clear from the record why the trial court believed it possessed the authority to dismiss a petition seeking relief, not from it, but from the Michigan Court of Appeals. Nor does it appear that the proceeding could be correctly called an appeal at that point inasmuch as the Michigan Court of Appeals, as best we can tell, had done nothing with Peterson's request for leave to appeal.

At any rate, the matter lay dormant for about two years until Peterson—or, more likely, a jailhouse lawyer acting on his behalf—filed a *pro se* motion in the Michigan trial court for relief from judgment pursuant to MCR 6.500.[2] The court—apparently assuming, incorrectly, that Peterson had regained competency—denied the motion, explaining:

> This court does not agree [with Peterson] that his appellate attorney acted inappropriately when he asked the court for guidance regarding the defendant's inability to communicate and grasp the legal issues facing him on appeal. However, the defendant is entitled to appellate review of his conviction regardless of his competency. As the court noted in *People v. Newton*, 152 Mich. App. 630, 635–36 (1986), *vacated on other grounds*, 428 Mich. 855 (1987), if the defendant regains competency and discovers additional issues of significant constitutional dimension that should have been raised he may file a motion under MCR 6.500 *et seq.* and present those issues to the court.

R. 11-6 at 133–34 (internal citation forms altered). The court then went on to consider *de novo* the merits of Peterson's claims—that is, the merits of what Peterson had "wanted" (whatever that

---

[2] Appointment of counsel to indigent defendants in MCR 6.500 proceedings is discretionary with the court unless "the court directs that oral argument or an evidentiary hearing be held," in which case appointment is mandatory. MCR 6.505.

word may have meant in this circumstance) to argue on direct appeal—concluding that he was not entitled to any relief.

Peterson attempted to appeal this denial, but his application for leave to appeal was dismissed for failure to comply with the relevant procedural rules. After several other abortive attempts to get relief from the Michigan courts, he filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 in federal district court.

Warden Paul Klee filed a motion for summary judgment, contending that the petition was untimely. The district court denied the motion, appointed counsel to represent Peterson, and ordered an evidentiary hearing. At that hearing, Peterson presented expert testimony that his mental health problems had prevented him from filing a timely *habeas* petition. The district court agreed, concluding that Peterson was entitled to equitable tolling of the statutory limitations period.

When it considered the petition itself, however, the district court concluded that *habeas* relief was barred by the doctrine of procedural default because Peterson had failed to raise his arguments before the Michigan appellate courts prior to filing his § 2254 petition. The district court explained that Peterson's mental illness, though very severe, did not excuse his procedural default because he had nevertheless been able to file court documents while incarcerated. The court also considered the merits of the petition, concluding that none of Peterson's arguments warranted relief. Relevant to this appeal, it ruled that there was "no Supreme Court authority . . . that clearly establishes the right to a renewed direct appeal with all of its attendant rights in these circumstances."

Peterson seeks reversal of this decision on appeal. He first contends that his mental illness excuses his procedural default, and second, that the district court erred in concluding that

there was no clearly established right to a renewed appeal. The Warden opposes these contentions and argues that the district court erred in tolling the limitations period. Though there are interesting and important legal issues in each of these arguments, we save most of them for another day because the bottom line in this case is that Peterson cannot prevail on the merits.

This is not to say that there is nothing troubling about what happened here. As we mentioned, the source of the Michigan trial court's authority to dismiss Peterson's request for leave to appeal is unclear to us, and we agree with the district court that "[i]t seems unfair that [Peterson]—a person whose mental ability is profoundly compromised—was left to fend for himself at a later date precisely because he had been incompetent when he initially filed his appeal."

But unfairness alone does not warrant *habeas* relief. When, as here, the facts are not in dispute and the state court adjudicated the claim on the merits, the Antiterrorism and Effective Death Penalty Act allows us to grant relief only when the relevant state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Peterson contends that he has satisfied this demanding standard, noting that the Supreme Court has long held that defendants cannot be denied a direct appeal as of right because they are indigent, *see Halbert v. Michigan*, 545 U.S. 605, 610 (2005) (quoting *Griffin v. Illinois*, 351 U.S. 12, 23 (1956) (Frankfurter, J., concurring in the judgment), and that, when an attorney's deficient performance deprives a defendant of a direct appeal as of right, prejudice must be presumed because the adversary process has become so compromised as to be "presumptively unreliable," *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)) (internal quotation marks omitted).

Peterson asks why, in light of these precedents, Michigan should be allowed to deprive a mentally incompetent defendant of the right to seek direct appellate review, especially because, in applying *Flores-Orega*, we have held that "Michigan's collateral post-conviction proceeding [is] too unlike an appeal of right to constitute a sufficient substitute." *Hardaway v. Robinson*, 655 F.3d 445, 450 (6th Cir. 2011). This is a good question, but the fact that it must be asked proves too much. Answering it would require us to extrapolate principles from cases such as *Griffin* and *Flores-Ortega* and apply them to a circumstance involving mental incompetency. This we cannot do. As the Supreme Court recently reminded us, "'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004))).

Moreover, the way Peterson frames the question papers over a serious weakness in his argument. Although he is correct that Michigan's collateral-attack proceedings are no substitute for direct appeals as of right, *Hardaway*, 655 F.3d at 450, it is not at all evident that Michigan's collateral-attack proceedings were an inadequate substitute for the leave-to-appeal proceeding of which Peterson was deprived. *Hardaway*'s reasoning is telling on this point. It based its conclusion on the fact that, unlike someone pursuing a direct appeal as of right, a defendant seeking appellate review of the denial of a motion for relief from judgment under MCR 6.500 "must apply for leave to appeal," "does not receive the benefit of oral argument" at the leave stage, and does not have the right to appointed counsel. *Id.* at 449–50 (citations omitted).

None of these distinctions helps Peterson. First, Peterson had no right to a direct appeal. Rather, just as in MCR 6.500 proceedings, those seeking appellate review of a plea must first obtain leave from the Michigan Court of Appeals. *Compare* MCR 6.302(B)(5) *with* MCR

6.509(A). Second, Michigan's rules do not allow for oral argument at the leave stage in either type of proceeding. *See* MCR 7.205(E)(1). Third, although Peterson did have appointed counsel at the leave stage, this was purely a grant of state law, not a clearly established constitutional requirement. Indeed, Michigan generally *prohibited* the appointment of counsel at the leave stage. *See* Mich. Comp. Laws. § 770.3a (2000); *see also* MCR 6.505.[3]

We use the past tense with respect to the third point because the Supreme Court held in *Halbert* that Michigan's prohibition of appointed counsel at the leave stage was unconstitutional under the Due Process and Equal Protection clauses. 545 U.S. at 610. But, contrary to Peterson's protestations, that holding is irrelevant here since *Halbert* was decided years after the trial court dismissed his request for leave to appeal. Indeed, Peterson does not even acknowledge this retroactivity problem, much less explain how it could be overcome. Nor does he argue that the Michigan trial court should have considered *Halbert* on collateral review— though *Halbert* had been decided several months before Peterson filed his MCR 6.500 motion, that case was not mentioned in his brief.

There is, in sum, little difference between what Peterson was deprived of and what he ended up with. Even if one were to assume that the reasoning of *Flores-Ortega* and *Griffin* could be legitimately extended to the circumstances of this case, it is far from obvious that MCR 6.500 proceedings were a constitutionally inadequate substitute. Nor are we persuaded that the Michigan courts had a duty to attempt to restore Peterson's competency. Anti-psychotic medicine *may* be forcibly administered to criminal defendants under certain circumstances, but this is not, as Peterson would have it, a constitutional *requirement*, much less a clearly established one. *See Sell v. United States*, 539 U.S. 166, 169 (2003).

---

[3] Though the record does not address this issue, it appears that Peterson was appointed counsel at the leave-to-appeal stage because he had received an above-the-guidelines sentence, which triggered an exception to the general prohibition. *See* Mich. Comp. Laws § 770.3a(2) (2000).

Thus, having found nothing that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d), we affirm the district court's denial of Peterson's petition for a writ of *habeas corpus*.

**MERRITT, Circuit Judge, concurring.** I agree with Judge Batchelder that Peterson does not comply with § 2254(d). That is because he never tells us what error the state court made.

The bottom-line problem for me in this case is: what specific relief in habeas does Peterson ask for—release, a reduction in sentence, a trial? Does he claim that his original plea was coerced or that he wants now to enter a plea of not guilty by reason of insanity, or what? His habeas petition does not state what relief he seeks. His basic claim is that due process of law entitles him to a direct appeal in state court and that we should issue an order requiring the state court to allow him to make a direct appeal of his state court sentence, but he does not explain why the state trial court was wrong to allow him to plead guilty or why the sentence for rape was wrong or invalid under either federal or state law. The federal habeas petition does not state a constitutional claim that anything that happened in the state proceeding was in error. In order to obtain federal habeas relief an understandable federal constitutional claim must be stated.