RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

PERLEY WINKLER,

　　　　　　　*Petitioner-Appellant,*

　　　*v.*

MIKE PARRIS, Warden,

　　　　　　　*Respondent-Appellee.*

No. 18-5301

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:14-cv-00509—Pamela Lynn Reeves, District Judge.

Argued:  May 8, 2019

Decided and Filed:  June 18, 2019

Before:  SUHRHEINRICH, THAPAR, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Jennifer L. Dollard-Smith, SQUIRE PATTON BOGGS (US) LLP, Cincinnati, Ohio, for Appellant.  T. Austin Watkins, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.  **ON BRIEF:**  Lauren S. Kuley, Colter L. Paulson, SQUIRE PATTON BOGGS (US) LLP, Cincinnati, Ohio, Nathan L. Colvin, VORYS, SATER, SEYMOUR, AND PEASE LLP, Cincinnati, Ohio, for Appellant.  T. Austin Watkins, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

SUHRHEINRICH, Circuit Judge.  Perley Winkler, Jr. was convicted in Tennessee state court of two counts of attempted first-degree murder and one count of attempted aggravated

arson. He now petitions for habeas relief, alleging his appellate counsel was constitutionally ineffective for failing to submit a small portion of his trial court record on appeal. He asserts that under *Entsminger v. Iowa*, 386 U.S. 748 (1967), the failure to file a portion of the record entitles him to presumed prejudice in the ineffective-assistance analysis. We reject Winkler's argument, **AFFIRM** the district court, and **DENY** the habeas petition.

## I. FACTS

The prosecution's case against Winkler primarily was based on the testimony of two witnesses: John Senn, and his girlfriend (now wife) Sherri Turpin Senn. John Senn testified that on the morning of April 17, 2007, one of his pit bull dogs woke him up. As he got up to let the dog outside, he looked out the small window in his back door and saw Winkler and Michael Aaron Jenkins in his yard. Senn testified that Jenkins was holding a gasoline jug, but that he dropped it and ran into the woods with Winkler. Senn testified that he woke up Sherri and told her to call the police. Senn testified that, in the meantime, he grabbed his gun, walked onto the back porch, and fired eight shots into the woods. As he walked outside, Senn smelled gasoline and saw that it had been poured in his jacuzzi, on his back porch, on the side of his house, and on both of his cars.

Sherri Turpin Senn corroborated most of John Senn's story. She also testified that her brother, Steve Abercrombie, had been in a long-running feud with Winkler, and that Mr. Abercrombie lived approximately 100 yards from her house. She testified that, one week before the incident, her sister-in-law, Lisa Abercrombie, played for her a voicemail message that Winkler had left on Mrs. Abercrombie's cellular telephone. According to Sherri Turpin Senn, Winkler said, "You are going to die, you are going to burn." She explained that she grew up with Winkler and had heard his voice "thousands" of times, so she recognized it on the voicemail.

Relevant to this appeal, Winkler raised two evidentiary objections during trial. First, Winkler wanted to impeach John Senn with his previous felony conviction for reckless endangerment. The trial judge kept the conviction out, finding that it was more than ten years old and had little probative value. Second, Winkler objected to Sherri Turpin Senn's testimony

about the voicemail as inadmissible character evidence. The trial judge overruled Winkler's objection (and a best-evidence objection from co-defendant's counsel) and allowed Sherri Turpin Senn to testify about what she heard on the voicemail.

The jury convicted Winkler of two counts of attempted first-degree murder and one count of attempted aggravated arson. After an unsuccessful motion for a new trial on the evidentiary issues, Winkler appealed. His counsel filed nearly the entire trial court record—except for the transcript of his motion for a new trial. Without it, the Tennessee Court of Criminal Appeals (TCCA) reviewed the evidentiary issues for plain error, found none, and affirmed Winkler's conviction.[1] *State v. Michael Aaron Jenkins and Perley Winkler, Jr.*, No. E2008–02321–CCA–R3–CD, 2011 WL 578593, at \*6 (Tenn. Crim. App., Feb. 17, 2011), *appeal denied* (Tenn. May 25, 2011).

The TCCA also denied Winkler's petition for post-conviction relief, stating "[t]he fact that trial counsel failed to prepare an adequate appellate record does not, standing alone, amount to ineffective assistance of counsel." *Winkler v. State*, No. E2012-02647-CCA-R3PC, 2014 WL 545479, at \*9 (Tenn. Crim. App. Feb. 10, 2014), *appeal denied* (Tenn. July 16, 2014). Instead, the TCCA concluded that Winkler must show what was left out of the record, and how he was prejudiced by the omission. *Id.*

Winkler now petitions for habeas relief, arguing that he was not required to prove actual prejudice under *Entsminger*. Therefore, according to Winkler, the TCCA's decision was contrary to clearly established Supreme Court precedent. Alternatively, Winkler says he can show actual prejudice. The district court denied Winkler's petition but granted him a certificate of appealability.

## II. STANDARD OF REVIEW

After a state court has adjudicated a claim on the merits, a federal court may only issue a writ of habeas corpus in two instances: (1) if the state court's decision was "contrary to, or

---

[1]The Tennessee Rules of Appellate procedure require that a party seeking review of the admission or exclusion of evidence in a case tried by a jury must first make a motion for a new trial on those grounds. Tenn. R. App. P. 3(e). If a party does not move for a new trial before appeal, the issue will be treated as waived, *id.*, and can only be reviewed for plain error, Tenn. R. App. P. 36(b).

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). For the "clearly established" route, we may only consider holdings—and not dicta—of the Supreme Court, *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015), and only holdings that were precedent when the state court adjudicated the issue, *Greene v. Fisher*, 565 U.S. 34, 38 (2011). We review the district court's legal habeas corpus decisions de novo and its factual findings for clear error. *Hand v. Houk*, 871 F.3d 390, 406 (6th Cir. 2017).

## III. ANALYSIS

The Supreme Court has held that the right to effective assistance of counsel extends to appeals. *Smith v. Robbins*, 528 U.S. 259, 276–77, 285 (2000); *Evitts v. Lucey*, 469 U.S. 387, 396–405 (1985). A petitioner claiming ineffective assistance of counsel must show that counsel's performance was deficient, and that the petitioner was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This "is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "[S]o long as fairminded jurists could disagree on the correctness of [the state court's] decision"—even if it was ultimately incorrect—we must deny the petition. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted).

Winkler and the State agree that trial counsel's failure to file the transcript from the motion for a new trial was deficient performance. *See also Moore v. Carlton*, 74 F.3d 689, 693 (6th Cir. 1996) ("[I]t seems clear that failing to file a significant portion of the record on direct appeal constitutes deficient performance."). Therefore, we consider only whether Winkler was prejudiced as a result.

*Presumed Prejudice.* In certain cases, counsel is so ineffective that prejudice is presumed. *See Garza v. Idaho*, 139 S. Ct. 738, 744 (2019). On appeal, "[t]he lodestar that guides courts to presume prejudice is whether the attorney's actions effectively 'deprived [the defendant] of the appellate proceeding altogether.'" *Carter v. Parris*, 910 F.3d 835, 842 (6th Cir. 2018) (alteration in original) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)). The

Supreme Court has presumed prejudice *on appeal* only in a limited number of situations: (1) when a defendant is denied appellate counsel, *Flores-Ortega*, 528 U.S. at 483; and (2) when appellate counsel fails to file a notice of appeal, *Garza*, 139 S. Ct. at 750. The Sixth Circuit has, similarly, presumed prejudice when appellate counsel fails to file an appellate brief. *See Hardaway v. Robinson*, 655 F.3d 445, 449 (6th Cir. 2011). The common theme among these cases is that the defendant lost the ability to appeal altogether.

Winkler purports to identify an additional presumed-prejudice scenario. He asserts that the Supreme Court's decision in *Entsminger v. Iowa*, 386 U.S. 748 (1967), sets a bright-line rule that prejudice is presumed whenever an attorney fails to file a portion of the trial court record on appeal. We do not read *Entsminger* so broadly.

In *Entsminger*, appointed counsel, believing that an appeal would have no merit, did not file the entire record. 386 U.S. at 750. Instead, he filed only the clerk's transcript (essentially a docket sheet), which did not contain a transcript of the evidence, the briefs, or the argument of counsel. *Id.* at 749. The Iowa Supreme Court affirmed the defendant's conviction despite defendant's request for the full record. *Id.* at 750. The Supreme Court reversed, stating that "there is no question but that [defendant] was precluded from obtaining a complete and effective appellate review of his conviction by the operation of the clerk's transcript." *Id.* at 752. The Court then remanded the case for consideration with the full record. *Id.*

Thus, in *Entsminger*, the defendant lost "all hope of any (adequate and effective) appeal" because the attorney *chose* not to file the entire record and the state appellate court *refused* to order it despite the defendant's request. *Id.* (citation and internal quotation marks omitted). *Enstminger* predates *Strickland*'s deficient performance and prejudice framework, but its reasoning suggests that prejudice is presumed when the defendant is *entirely* prevented from presenting the trial court record to the appellate court.**²** But that is not what happened here.

---

**²**Another pre-*Strickland* case, *Hardy v. United States*, 375 U.S. 277 (1964), shows what happens when appellate counsel cannot access the full trial transcript. There, an indigent defendant filed a pro se application for leave to appeal. *Id.* at 278. The court of appeals ordered only the parts of the transcript referenced in the defendant's conclusory allegations on appeal. *Id.* Pro bono counsel, appointed after defendant filed his application, filed a motion with the court of appeals requesting the entire transcript. *Id.* The court of appeals denied the motion. *Id.* The Supreme Court reversed, concluding that "counsel's duty cannot be discharged unless he has a transcript of

Winkler's counsel filed a notice of appeal. He wrote two briefs. He submitted a record of over 800 pages, including the trial transcripts and exhibits, and failed to submit only the transcript (about six pages) from the post-trial hearing on Winkler's motion for a new trial. The TCCA then reviewed his conviction for sufficiency of the evidence. Thus, Winkler was not, by a long shot, "deprived . . . of the appellate proceeding altogether." *Flores-Ortega*, 528 U.S. 483. Two post-*Strickland* Sixth Circuit cases lend support to this conclusion.

In *Moore v. Carlton*, the petitioner sought a writ of habeas corpus based on his appellate counsel's failure to file a complete trial transcript. 74 F.3d at 690. Both the TCCA and the district court rejected petitioner's ineffective assistance of counsel claims because he could not show prejudice. *Id.* We affirmed. *Id.* at 694. Using the two-part *Strickland* analysis, we held: "[I]t seems clear that failing to file a significant portion of the record on direct appeal constitutes deficient performance, when the sufficiency of the evidence is an issue." *Id.* at 692–93 (citing *Entsminger*, 386 U.S. at 750–51). "However," we continued, "the prejudice prong of this claim must also be hurdled." *Id.* at 693. We concluded that "ample evidence" supported petitioner's conviction and that there was "not even a modicum of evidence here that the incomplete transcript resulted in actual prejudice." *Id.*

Similarly, in *Bransford v. Brown,* the petitioner raised due process and ineffective assistance claims when his appellate counsel failed to obtain the transcripts of the jury instructions. 806 F.2d 83, 84 (6th Cir. 1986). But appellate counsel did so based upon his conversations with trial counsel. *Id.* at 83–84. We held that where "[petitioner's] trial attorney communicated with his appellate attorney, the absence of the jury instruction transcripts is not a *per se* denial of his due process rights to a fair appeal. Instead, in order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing transcripts." *Id.* at 86 (citations omitted). Likewise, applying *Strickland*, we held that although appellate counsel's performance was deficient due to his failure to secure the transcript of the jury instructions, there was no prejudice because appellate counsel "did review the bulk of the trial proceedings and perfected an appeal on behalf of petitioner, which appeal was heard on the merits." *Id.* at 87.

---

the testimony and evidence presented by the defendant and also the court's charge to the jury, as well as the testimony and evidence presented by the prosecution." *Id.* at 282.

We "recognize[d] the difficulties inherent in an attempt to prove prejudice when no record exists of the proceedings at issue," but nonetheless concluded that "petitioner must present us with something more than rank speculation." *Id.*

In short, based on clear precedent, a presumption of prejudice arises only when the petitioner is effectively prevented from presenting any part of the trial court record on appeal because counsel fails to file it and the court fails to obtain it. In all other ineffective assistance cases regarding the trial court record on appeal, a petitioner must show actual prejudice. Here, Winkler's counsel filed a significant portion of the trial court record on appeal. Therefore, Winkler is not entitled to presumed prejudice. Instead, he must show actual prejudice resulting from his counsel's deficient performance.

*Actual Prejudice.* To do that, Winkler must show that "there is a reasonable probability that inclusion of the [evidentiary] issue[s] would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citation omitted). We consider each piece of evidence in turn and "decide whether there is a reasonable probability that the claim would have prevailed at the time counsel failed to raise it." *McFarland*, 356 F.3d at 699.

*The stale conviction.* Winkler asserts that there is a reasonable probability that the TCCA would have reversed the trial judge's decision to omit any reference to John Senn's stale felony conviction for reckless endangerment. We disagree. The TCCA would have reviewed the trial judge's decision for an abuse of discretion. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). In Tennessee, a party may only present evidence of a witness's prior conviction to attack the witness's credibility if that conviction was for a felony or if the crime "involved dishonesty or false statement." Tenn. R. Evid. 609(a)(2). Although Senn's conviction was a felony, it was more than ten years old. Therefore, it was only admissible if its probative value substantially outweighed its prejudicial effect. Tenn. R. Evid. 609(b).

Winkler asserts that the conviction was probative because, as a felon, Senn could not own or discharge a firearm. Thus, Senn could have been prosecuted for firing the gun, so he had to

"invent a reason to justify his gunplay to the police." The trial judge determined the conviction had little probative value and that Winkler's reasoning for offering it was collateral to the question at trial—i.e., whether Winkler attempted to burn down Senn's house. The trial judge's reasoning is sound, and we do not see any substantial likelihood that the TCCA would have determined that the trial judge abused her discretion.

*The voicemail.* Winkler also asserts that the there is a reasonable probability that the TCCA would have reversed the trial judge's decision to let Sherri Turpin Senn testify that she heard Winkler say, "You are going to die, you are going to burn," in a voicemail. Again, we disagree.

Winker first attempts to characterize the voicemail statement as inadmissible character evidence. *See* Tenn. R. Evid. 404(b). In Winkler's view, his voicemail to Lisa Abercrombie was a prior bad act that the State used to show that he was an arsonist, and that he was acting in conformity with that trait when he poured gasoline on the Senns' house. However, the voicemail was evidence that Winkler threatened direct harm against Sherri Turpin Senn. She and Lisa Abercrombie were sisters-in-law, their houses were only 100 yards apart, and Winkler was engaged in a long-running feud with her entire family. Threats of direct harm are not barred by Rule 404(b) because they "show [the] defendant's hostility toward the victim, malice, intent, and a settled purpose to harm the victim." *State v. Smith*, 868 S.W.2d 561, 574 (Tenn. 1993); *see also State v. Bias*, No. E2007-01452-CCA-R3-CD, 2009 WL 3817291, at *15 (Tenn. Crim. App. Nov. 16, 2009) (holding trial court properly admitted threat "if you call the law I will come back and kill you and burn your house").

Winkler also asserts that Sherri Turpin Senn's testimony about the voicemail is not the best evidence of the voicemail. We note, however, that the best evidence rule is one of preference, and the original recording is not required if it has been lost, destroyed, or is unobtainable. Tenn. R. Evid. 1004(1)–(2). On post-conviction review, Lisa Abercrombie (to whom the voicemail was originally sent) and Andrew Freiberg (the prosecutor) testified that the voicemail no longer existed at the time of Winkler's trial. Absent the original recording, the best evidence rule is inapplicable.

## IV. CONCLUSION

Prejudice is presumed only in limited instances on appeal. The failure to file a small portion of a trial court record is not one of them. Therefore, the TCCA's decision to deny Winkler's ineffective-assistance claim was neither contrary to, nor an unreasonable application of, clearly-established Supreme Court precedent.

We **AFFIRM** the district court and **DENY** Winkler's petition.