NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0078n.06

Case No. 13-1260

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 27, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FREDERICK GRUMBLEY, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| SHERRY BURT, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE: DAUGHTREY, ROGERS, and DONALD, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** Frederick Grumbley ("Grumbley"), a Michigan state prisoner, appeals the district court's judgment denying his petition for writ of habeas corpus filed pursuant to 28 U.S.C § 2254. The charges against Grumbley arose out of an allegation by his then thirteen-year-old half-sister, Misty Grumbley ("Misty"), that Grumbley had been pressuring her to make a sexually explicit film with one of her male friends, Chad Fuoss ("Chad"), and threatened that he would have Chad charged with statutory rape if Misty refused to have sex with Chad and allow Grumbley to videotape it. Misty also alleged that Grumbley had sexually abused her on two occasions, once when she was seven and once when she was twelve. Misty advised her parents of the matter and then recounted the allegations to the police. Grumbley was arrested at his home, without a warrant, the day after Misty's parents

reported the allegations to the police, and a jury trial followed. After being convicted of five of

the seven charges brought against him,[1] Grumbley was sentenced as a habitual offender, fourth

offense, Mich. Comp. Laws § 769.12, to a prison term of 24 to 50 years on extortion, attempt to

prepare child sexually abusive material, and felon in possession charges; a term of 5 to 15 years

on a count of possession of child sexually abusive material, to be served concurrently with the 24

to 50 year term; and a term of 2 years on the felony-firearm conviction, to be served preceding

and consecutive to the sentences on the other charges.

Grumbley argued in his federal habeas petition that his trial counsel was ineffective for

failing to file a motion to suppress evidence found during a search of Grumbley's home, even

---

[1]Although Grumbley was charged with seven offenses, some of these offenses contain multiple parts. For clarification, they are broken down as follows:

Count I: Child sexually abusive material (guilty)

Count II: Second degree criminal sexual conduct as to Misty Grumbley (not guilty)

Count III: Second degree criminal sexual conduct as to Misty Grumbley (not guilty)

Count IV: Extortion (guilty)

Count V:
    Part 1: Child sexually abusive activity as to Dory Robinson (not guilty)
    Part 2: Child sexually abusive activity as to Misty Grumbley (guilty)
    Part 3: Child sexually abusive activity as to Chad Fuoss (guilty)

(Count V was an "and/or" count, and therefore Grumbley was found guilty of the whole count)

Count VI: felon in possession of a firearm (guilty)

Count VII:
    Part 1: felony-firearm (possession of a firearm during the commission the felony of child sexually abusive material) (guilty)
    Part 2: felony-firearm (possession of a firearm during the commission of the felony of being a felon in possession of a firearm ) (guilty)

though the police found the evidence at issue after they had illegally arrested Grumbley in his home without a warrant. For the reasons stated below, we **REVERSE** the district court's finding that Grumbley's trial counsel was not ineffective for failing to move to suppress evidence illegally seized from Grumbley's home, and **REMAND** with instructions to grant Grumbley a conditional writ of habeas corpus.

I.

A.

When his state case began, Grumbley was living with Connie Robinson ("Robinson") and her daughter, Dory, in a trailer. Dory's age at that time is unspecified. Grumbley and Robinson were intimately involved with one another for a short period of time, and then lived together for eleven years "as friends."

In the trailer, Grumbley had access to his bedroom as well as the common areas of the living room, kitchen, and bathroom. Robinson and Dory slept in a separate bedroom. Grumbley's computer and associated media were stored in his room. Robinson never went into Grumbley's room to inspect his things. When asked if any of Grumbley's computer or related technology was ever in her bedroom or the common areas, Robinson testified that a Microsoft disk was the only computer item of Grumbley's that she had seen in the common areas.

Grumbley was arrested at this home on December 16, 2003, just after 9 p.m. Grumbley was arrested based on accusations from his then thirteen-year-old half-sister, Misty, who alleged that Grumbley had inappropriately touched her once in 2003 and once five years prior, when Misty was seven. At trial, Grumbley denied both allegations of sexual contact with Misty, and a jury acquitted him of two charges of criminal sexual conduct under Mich. Comp. Laws § 750.520c.

Additionally, Misty alleged that Grumbley told her he wanted to make a sex tape of her and Chad to put on the Internet. Misty further alleged that Grumbley said that if she did not make the sex tape with Chad, then Grumbley wanted to have sex with her. Grumbley allegedly gave Misty twenty-four hours to make a decision. Grumbley testified that he did not want to make the sex tape for his own gratification, but to "prove" that Chad was involving Misty in a "Gothic lifestyle."

On December 15, 2003, Misty told her parents about the alleged conversation, and they then called the police. They spoke to Deputy Travis Henige that day, and to Detective Virginia May the following day. Sergeant Mark Garabelli also became involved with the case. Deputy Henige took down Misty's initial complaint. At that time, Misty's father, Frederick Grumbley, Sr., warned Deputy Henige that there might be a firearm in Grumbley's trailer. Although they did not obtain a warrant, Detective May, Deputy Henige, Sergeant Garabelli, and Deputy Fresorger went to Grumbley's trailer on the night of December 16, 2003, to arrest him. Detective May testified that she conferred with her superior officer before making the arrest. Detective May and her superior officer concluded at that time that where there was probable cause for a felony, Detective May had authorization to arrest suspects without a warrant. Before going to Grumbley's home, Detective May met with the two deputies and Sergeant Garabelli to update them on the status of the investigation. They then proceeded to the trailer. Detective May was in plain clothes, while Deputy Henige, Deputy Fresorger, and Sergeant Garabelli were in uniform. Sergeant Garabelli testified that either Deputy Fresorger or Deputy Henige knocked on the door, and someone answered quickly. Grumbley, Robinson, and Dory were in the home.

Sergeant Garabelli testified that when the door to the small trailer was answered, the officers had their guns drawn and they ordered Grumbley to the ground. Sergeant Garabelli

testified that he did not recall having a conversation with the person who answered the door. Detective May testified, "We knocked on the door. We identified ourselves, and we asked for Frederick Grumbley. We went in." Detective May further testified that, when Grumbley saw who was at the door, he said "three times you're out." At this point, the officers secured Grumbly in handcuffs and placed him on a chair in the living room. Robinson and Dory were sitting on a couch in the living room.

Detective May requested permission to search the trailer. Sergeant Garabelli testified at trial that Detective May asked both Grumbley and Robinson for permission to search the home, and that both responded in the affirmative. Detective Henige testified that Detective May requested and received consent to search the home from Grumbley, and that Robinson did not register any protest. Robinson testified that she did not recall the police asking to look around. Detective May and Sergeant Garabelli further testified that Grumbley gave them permission to "take whatever you need," and did not limit his permission or ask for a search warrant. Detective May also testified that Grumbley signed a consent form in her presence, though the prosecution was unable to produce the form at trial. At his sentencing hearing, Grumbley testified that he had limited his consent on this form, and that he had granted permission only for the police to take his computer.

With respect to the items seized, Sergeant Garabelli testified that he asked about the presence of firearms, for the protection of the officers. Both Robinson and Grumbley indicated where the officers would find guns in their respective bedrooms. Detective May testified that Grumbley stated his computer had crashed, and that he had to take it apart. Sergeant Garabelli testified that he did not recall Grumbley commenting about the condition of his computer.

Detective May testified that she did not personally collect all of the evidence gathered from Grumbley's home, but that she bagged what the other officers collected after they had advised her of where the items had been located. Some evidence was bagged at the Sheriff's Department, and some at the trailer. On appeal, Grumbley provides the following list of evidence that is the "most closely related to the contested charges in this appeal":

> Three firearms: a pistol found in Robinson's bedroom, and a case with two guns found in Grumbley's room.
>
> One CD containing what appeared to be commercially made child pornography. Grumbley testified at trial that he downloaded the child pornography. Grumbley also testified at his sentencing hearing that the disc was deleted, and that he had no way of accessing the material.
>
> A desktop computer tower with no hard drive. Grumbley testified at trial that he had destroyed the hard drive because it had gotten viruses on the Internet, and therefore it had crashed several times.
>
> Two other computers, neither of which contained hard drives. Grumbley testified at trial that he was building one of these computers for Dory, and was using the other himself.
>
> Six floppy disks which did not contain child pornography. Detective Paul Dietzel testified that these disks contained "writing," including "bind twins, pullover, sex rules, bear, opnut" and "nude lingerie."
>
> Magazines found in Grumbley's bedroom. Sergeant Garabelli testified that the magazines contained images of children.
>
> Undeveloped film. The film was later processed, and included pictures of Dory nude wearing her mother's bra. Grumbley testified at trial that he had taken the photos because Dory was "acting goofy" and he wanted to "capture it on film."[2]

After the police searched his home, they took Grumbley to Saginaw County Jail. Sergeant Garabelli read Grumbley his *Miranda* rights in the patrol vehicle and again at the

---

[2]The jury ultimately acquitted Grumbley of child sexually abusive activity as to Dory Robinson.

station, where Grumbley also signed a *Miranda* form. Sergeant Garabelli testified that Grumbley made statements both in the car and after he had signed the waiver form at the station. The statements made after Grumbley signed the waiver form were tape recorded and played at trial.

Grumbley was tried in Saginaw County Circuit Court in June 2004. The Saginaw jury convicted Grumbley of attempt to prepare child sexually abusive material, Mich. Comp. Laws § 750.145c(4); extortion, Mich. Comp. Laws § 750.213; child sexually abusive activity as to Misty and Chad, Mich. Comp. Laws § 750.145c(2); being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and felony-firearm possession, Mich. Comp. Laws § 750.227b.

B.

On direct appeal, the Michigan Court of Appeals affirmed Grumbley's convictions, and denied his motion for reconsideration. *People v. Grumbley*, 2006 WL 3751427, at *1 (Mich. Ct. App. Dec 21, 2006). The Michigan Supreme Court denied his application for leave to appeal. *People v. Grumbley*, 737 N.W.2d 726 (Mich. 2007).

In October 2007, Grumbley filed a petition for writ of habeas corpus in the Eastern District of Michigan pursuant to 28 U.S.C. § 2254. The State filed a motion to dismiss, arguing that Grumbley had not fully exhausted all of his claims. The district court granted the State's motion and dismissed the case without prejudice. Grumbley then filed a motion for relief from the judgment in the state trial court. The trial court denied the motion by opinion and order dated July 21, 2008, holding that Grumbley could have raised his grounds for relief on direct appeal, and that he had failed to establish ineffective assistance of counsel.

Grumbley then filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims that he raised before the state trial court. The Michigan Court of

Appeals, by ordered dated December 15, 2008, dismissed the application for leave to appeal for "failure to pursue the case in conformity with the rules. MCR 7.201(B)(3) and 7.216(A)(10)." Specifically, Grumbley failed to provide the court with the required number of copies of the pleadings in a timely manner, despite the court's warning that failure to provide the requisite number of copies could result in the dismissal of his application. Grumbley then sought leave to appeal this decision in the Michigan Supreme Court, but the court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Grumbley*, 773 N.W.2d 15 (Mich. 2009).

Once Grumbley's collateral appeal in the Michigan courts concluded, he filed a renewed habeas petition in the district court. After the district court granted Grumbley review of his habeas petition under 28 U.S.C. § 2241(c)(3), it denied the petition. The district court found that five of Grumbley's six claims were procedurally defaulted, and that Grumbley was not entitled to habeas relief on his Fourth Amendment ineffective assistance of counsel claim—the issue before us in this appeal. Additionally, the district court denied Grumbley a certificate of appealability, denied him leave to proceed in forma pauperis on appeal, and denied a subsequent motion for reconsideration. *Grumbley v. Heynes*, No. 1:10-CV-10240-BC, 2012 WL 6621153, at *8 (E.D. Mich. Dec. 19, 2012), *reconsideration denied*, No. 1:10-CV-10240-BC, 2013 WL 172996 (E.D. Mich. Jan. 16, 2013).

Grumbley then petitioned this Court for a certificate of appealibility. This Court affirmed the district court on the five procedurally defaulted claims, but granted a certificate of appealibility solely as to "Grumbley's claim that trial counsel was ineffective for failing to file a motion to suppress." Specifically, this Court stated:

> Reasonable jurists could debate the district court's resolution of Grumbley's claim that trial counsel was ineffective for failing to move to suppress

the evidence seized from his home. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). According to the Michigan Court of Appeals, the facts in the record did not support Grumbley's argument that a suppression motion would have been meritorious or outcome determinative because, even if his arrest were illegal, his consent to search his home allowed for the admission of the seized evidence. In reaching this conclusion, the Michigan Court of Appeals considered the voluntariness of Grumbley's consent to search but did not address whether that consent was sufficiently attenuated from the allegedly illegal arrest. *See United States v. Beauchamp*, 659 F.3d 560, 573 (6th Cir. 2011); *United States v. Lopez-Arias*, 344 F.3d 623, 629 (6th Cir. 2003).

This Court granted Grumbley's motion for leave to appeal in forma pauperis. Subsequently, Grumbley moved for reconsideration of the denial of a certificate of appealability as to his ineffective assistance of appellate counsel claims, and for appointment of counsel.[3] This Court denied Grumbley's motion for reconsideration, and granted Grumbley's motion for appointment of counsel as to his ineffective assistance of trial counsel claim.

II.

A.

We have appellate jurisdiction over the district court's denial of Grumbley's habeas petition pursuant to 28 U.S.C. §§ 1291 and 2253. When a district court denies a habeas petition, we review the district court's findings of law de novo, and its findings of fact for clear error. *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir.2000), *cert. denied*, 532 U.S. 989 (2001). In contrast, the standard for reviewing state court determinations of habeas petitions is governed by

---

[3]Prior to being appointed counsel on the limited issue of ineffective assistance of trial counsel, Grumbley proceeded pro se on all of his prior appeals—direct appeal, state habeas, federal habeas before the district court, and his request for a certificate of appealability before this Court.

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009). AEDPA prohibits federal courts from granting habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court adjudication is "contrary to" federal law if it reaches a conclusion of law opposite to that reached by the Supreme Court, or if the state court decides a case with materially indistinguishable facts differently than the Supreme Court. *Goodell v. Williams*, 643 F.3d 490, 495 (6th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007) (citing *Williams*, 529 U.S. at 407-08); *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "Clearly established Federal law" refers to Supreme Court holdings at the time of the state court's decision. *Williams*, 529 U.S. at 412. A panel may not employ circuit precedent "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam).

Claims of ineffective assistance of counsel are governed by the law set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court articulated a two-part test for determining whether counsel was constitutionally ineffective:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. The prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Additionally, "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375.

The Supreme Court has cautioned that the standards created by *Strickland* and § 2254(d) "are both highly deferential," and that "when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997) and *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks omitted)). Further, the Supreme Court has instructed federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.* "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### B.

Because the Michigan Supreme Court denied Grumbley leave to appeal, *see People v. Grumbley*, 737 N.W.2d 726, the Michigan Court of Appeals issued the last state court opinion

adjudicating Grumbley's Fourth Amendment claim on the merits. *People v. Grumbley*, 2006 WL 3751427.

The Michigan Court of Appeals began by noting that, because Grumbley did not timely request a "*Ginther* hearing" on appeal, the record does not include testimony from his defense counsel regarding counsel's reasons for not filing a motion to suppress. *Id.* at *2 (citing *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973)). The court then found that the facts that are in the record did not support Grumbley's "contention that a motion to suppress the evidence based on the constitutionality of the arrest and/or search would have been meritorious or that such a motion would have been outcome determinative." *Id.* The court based this conclusion on the following analysis.

The court first found that the officers "clearly had probable cause to believe that defendant recently committed or was still committing numerous felonies, including criminal sexual conduct against his half-sister, possession of a firearm by a felon, felony-firearm, extortion, possession of child pornography, and attempt to prepare child sexually abusive material." *Id.* at *3. The court based its probable cause determination on three sources: (1) direct information from Misty that Grumbley had abused her in the past; (2) direct information from Misty that Grumbley had given her a limited time to decide whether to participate in a sexually explicit video or have Chad reported for statutory rape; and (3) information from Grumbley and Misty's mutual father that Grumbley had weapons in his home. *Id.*

The court also acknowledged that, under the federal and state constitutions, arrests that occur in the defendant's residence require "special protections"—i.e., a warrant. *Id.* at *2. The court then noted that the warrant requirement could be overcome either by consent or by exigent

circumstances. *Id.* The court found the record inconclusive as to whether exigent circumstances existed because it was "[u]nable to establish the precise location" of Grumbley's arrest. *Id.* at *3. In any event, the court determined that "[e]ven if the arrest was illegal, . . . defendant's consent to search the home allow[ed] for the admission of the seized evidence." *Id.* The court reasoned:

> Under the exclusionary rule of *Wong Sun v. United States*, 371 U.S. 471 . . . (1963), "the appropriate inquiry, where a defendant claims that physical evidence should be suppressed as a result of an unlawful seizure, is whether that evidence was procured by an exploitation of the illegality or, instead, by means sufficiently distinguishable to be purged of the primary taint." *People v. Kroll*, . . . 446 N[.]W[.]2d 317[, 318-19] ([Mich.] 1989). Evidence is not to be excluded from trial if the connection between the purportedly illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint. Consent by a defendant, if "sufficiently an act of free will" to purge the primary taint of the unlawful search or seizure, may produce the requisite degree of attenuation. *People v. Essa*, . . . 380 N[.]W[.]2d 96[, 99] ([Mich.] 1985).

> The consent exception to the Fourth Amendment's warrant requirement allows search and seizure when consent is unequivocal, specific, and freely given. *People v. Marsack*, . . . 586 N[.]W[.]2d 234[, 240] ([Mich.] 1998). "Whether consent to search is freely and voluntarily given is a question of fact based on an assessment of the totality of the circumstances." *People v. Borchard-Ruhland*, . . . 597 N[.]W[.]2d 1[, 10] ([Mich.] 1999).

*Id.* The court then found that Detective May, Deputy Henige, and Sergeant Garabelli all consistently testified that Detective May requested and received permission from Grumbley to search the trailer. *Id.* The court emphasized that Grumbley admitted at trial that he consented to the search, cooperated in the search by directing the officers to locations in the trailer where they could find his weapons, and "signed a written consent that neither specified the object of the search nor limited the search in any manner." *Id.* The court also emphasized that Grumbley

"testified that he consented to the search because, although he admittedly downloaded child pornography onto a computer disk, he forgot that he had the disk in the house." *Id.*

The court claimed that Grumbley argued, for the first time on direct appeal, that his consent was involuntary. *See id.* at *4 ("Defendant now claims, however, that he gave his consent only after armed police officers placed him under arrest, and that his consent was thus coerced and therefore invalid."). The court found this argument to be dubious at best. Although the court acknowledged that coercive police conduct or a coercive atmosphere is "relevant in determining whether the consent was voluntary," the court did not find Grumbley's consent to be involuntary. *Id.* The court concluded:

> At trial, defendant acknowledged consenting to the search of his home, corroborated numerous facts included in police descriptions of the search and of defendant's arrest, mentioned nothing at all about feeling scared, intimidated, or threatened, and actually provided an explanation for allowing the police to conduct this search even though defendant—by his own admission—had been using his computer and recordable media to obtain child pornography. Considering the totality of the circumstances—including defendant's age, prior experience with law enforcement, level of education (high school graduate with some college), lack of any evidence of drug or alcohol intoxication, lack of evidence of violence or threats of violence by police, the relatively short duration of the police detention, the location of that detention being defendant's home, the presence of an adult female and young child in that location, defendant's testimony regarding his belief that he had already destroyed or discarded his collection of child pornography, and numerous additional examples of defendant voluntarily waiving constitutional rights despite his awareness of those rights, we conclude that the consent to search given by defendant was the product of his own free will. Additionally, the search was carried out within the scope of defendant's voluntarily given consent. It was therefore permissible for officers to seize the evidence from defendant's home without the benefit of a warrant. The items seized were either in plain view or were found in the spots where defendant told the officers to look.
>
> In sum, given the subject matter of the investigation, the nature of the information provided by witnesses during the interviews conducted prior to the

search, and the limitless scope of defendant's consent, it is reasonable to conclude that: (1) the officers had probable cause to conduct the search, (2) defendant's voluntary, limitless consent vitiated the need for officers to obtain a search warrant, (3) the incriminating nature of the items seized was readily apparent, and (4) the officers' search never exceeded the scope of defendant's consent. The evidence was therefore admissible.

*Id.*

C.

The district court determined that Grumbley's Fourth Amendment claim "lacks merit." *Grumbley v. Heynes*, 2012 WL 6621153, at *5. Specifically, the district court determined that Michigan "provides a procedural mechanism for raising a Fourth Amendment claim"—i.e., a motion to suppress. *Id.* at *6. Because Grumbley "ha[d] not demonstrated that Michigan courts' mechanism for evaluating [his] Fourth Amendment claim malfunctioned," the district court concluded that Grumbley did not have a cognizable, independent Fourth Amendment claim. *Id.*

However, the district court then found that, although Grumbley's Fourth Amendment claim was "not cognizable on habeas review under *Stone* [*v. Powell*, 428 U.S. 465 (1976)], he [was] not precluded from raising a Sixth Amendment claim on the basis of his counsel's not litigating the claim." *Id.* at *6. The district court, relying entirely on the above excerpted portions of the Michigan Court of Appeals' consent analysis, also found that Grumbley's ineffective assistance of counsel claim lacked merit. *Id.* at *8. The court thus denied habeas relief on Grumbley's ineffective assistance of counsel claim.

III.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend IV. The protections afforded by the Fourth Amendment are nowhere greater than in the home. As stated by the Supreme Court in *Payton v. New York*:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 683 [(1961)]. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.

445 U.S. 573, 589-90 (1980) (first and second alterations in original). In *Payton*, the Supreme Court made clear that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. *Id.* at 576. "Absent exigent circumstances," the threshold of the home "may not reasonably be crossed without a warrant." *Id.* at 590.

A.

It is undisputed that the officers involved in Grumbley's arrest did not have a warrant when they arrested Grumbley at his home, and were not operating under any confused or mistaken belief that they had a warrant. Accordingly, under *Payton* and its progeny, the officers' entry into Grumbley's private home without a warrant to effect an arrest can only be justified

either by exigent circumstances or by consent. *Payton*, 445 U.S. at 576; *see also Steagald v.*

*United States*, 451 U.S. 204, 211 (1981).

The State does not argue that exigent circumstances permitted entry of the home without

a warrant or consent. Nor does the State argue that the post-arrest search would have been

permissible absent an original consent to enter the home.[4] Accordingly, the only Fourth

Amendment issue on appeal is whether the arrest was legal because the officers had consent to

enter the home in the first place, as the State now argues. The State, however, did not make this

argument to the state courts or to the district court below. At oral argument, the State argued that

it should be excused from raising the issue below because of federalism concerns underlying the

limited nature of federal habeas corpus. But in this case, the State did not provide a factual basis

in the state courts for its present contention that the officers had consent to enter the home.[5] We

therefore conclude that the officers lacked consent to enter the home. It follows that the State is

---

[4]The State chose not to address the issue certified for appeal. Rather, the State has raised two arguments: (1) probable cause supported Grumbley's in-home arrest and he voluntarily consented to the search of the trailer; and (2) Grumbley gave consent for the police to enter his home. As to the first argument, the state court employed the same logic when it concluded that, "[e]ven if the arrest was illegal, . . . defendant's consent to search the home allows for the admission of the seized evidence." *People v. Grumbley*, 2006 WL 3751427, at *3. Probable cause alone is *not* sufficient to justify a warrantless, in-home search. For this reason, both the State and the state court have elided the threshold question that this Court certified: whether Grumbley's warrantless, in-home arrest was illegal, and whether the subsequent consent to search was sufficiently attenuated from the allegedly illegal arrest. In raising this argument, rather than addressing the issue certified, the State concedes that were this Court to find Grumbley's arrest illegal, then his consent to search was not sufficiently attenuated from the illegal arrest.

[5]The factual basis for this argument is not apparent. The officers knocked on the door of the trailer with guns drawn, an occupant of the trailer answered the door, the officers immediately entered, and the officers immediately ordered Grumbley to the ground and handcuffed him. Grumbley's ambiguous statement, "three times you're out," upon seeing the officers at his door cannot reasonably be construed as submitting to arrest or consenting to police entry, as the State now argues.

left without a leg to stand on regarding whether there was a Fourth Amendment violation regarding the search.

B.

We turn now to the question of whether the state court unreasonably applied *Strickland* in finding that Grumbley's trial counsel was constitutionally effective despite his failure to move to suppress the physical evidence obtained from the search of Grumbley's home. We find that Grumbley has met his burden under the doubly deferential standards of AEDPA and *Strickland.*

The state court concluded that "the facts in the record do not support defendant's contention that a motion to suppress the evidence based on the constitutionality of the arrest and/or search would have been meritorious or that such a motion would have been outcome determinative." *People v. Grumbley*, 2006 WL 3751427, at *2. The state court predicated this conclusion on its finding that, "[e]ven if the arrest was illegal, . . . [Grumbley]'s consent to search the home allows for the admission of the seized evidence." *Id.* at *3. For the reasons discussed, the state court's analysis is incorrect because voluntary consent alone is insufficient to purge the taint of an illegal seizure. Voluntariness is only the "threshold" condition of the Fourth Amendment analysis required by Supreme Court precedent. *Dunaway v. New York*, 442 U.S. 200, 219 (1979). In failing to conduct the attenuation analysis, the state court unreasonably applied clearly established federal law. The district court, in relying entirely on the state court's consent analysis to determine that Grumbley's ineffective assistance of counsel claim "lack[ed] merit," also erred. *Grumbley v. Heynes*, 2012 WL 6621153, at *8.

Under the first prong of the *Strickland* test, Grumbley has satisfied his burden of showing his trial counsel's performance fell below an objective standard of reasonableness when he failed to move to suppress evidence tainted by illegality. Because Grumbley's pro se *Ginther* motion

was untimely, we cannot know what Grumbley's trial counsel's reasons were for not filing a motion to suppress. Even so, it is difficult to conceive of a legitimate trial strategy or tactical advantage to be gained by *not* filing a motion to suppress. The warrantless and nonconsensual entry into Grumbley's home in order to make a routine felony arrest is a clear violation of *Payton*. That violation is not obviated by exigent circumstances and, under *Wong Sun* and its progeny, is not obviated by valid consent.

Under the second prong of the *Strickland* test, Grumbley has satisfied his burden of showing he was prejudiced by his counsel's failure to file a motion to suppress. Conceptually, the seven charges brought against Grumbley can be divided into three categories: (1) charges related to Misty's allegations (extortion, attempt to prepare child sexually abusive material, and child sexually abusive activity as to Misty and Chad); (2) charges related to Dory (child sexually abusive activity, of which Grumbley was acquitted); and (3) charges related to the firearms and pornographic material found during the illegal search (possession of child sexually abusive material, being felon in possession of a firearm, and felony-firearm possession). The charges in the first category were not related to any of the effects found during the search. We can therefore safely presume that other evidence presented at trial was sufficient to convict Grumbley of the extortion and attempt to prepare child sexually abusive material charges. *See Strickland*, 466 U.S. at 695 (noting that courts assess the totality of the evidence in the record in evaluating whether an error prejudiced the defendant). The charges in the third category, however, depend largely on the effects found during the unlawful search. In other words, the critical components of the prosecution's case against Grumbley for three of the five convictions rest on evidence that should have been suppressed. If the trial court had suppressed the firearms, the State would not have had physical evidence to support Grumbley's convictions for felony-

firearm possession and being a felon in possession of a firearm. If the trial court had suppressed the CD, magazine, and photographs, the State would not have had physical evidence to support Grumbley's conviction for possession of child sexually abusive material. Without this evidence, the State would have lost a significant evidentiary portion of its case-in-chief against Grumbley, as well as the opportunity to further prejudice the jury against him.

The State avers that, even if this Court determines that trial counsel's performance fell outside the range of reasonable professional assistance, Grumbley's claim still fails because he cannot show a substantial likelihood that the outcome of trial would have been different absent counsel's alleged error. Scant record evidence supports this contention. The State cites to extensive trial testimony by Misty and others regarding what Grumbley attempted to pressure Misty into doing. Citation to this testimony is a red herring, however, because the charges related to Grumbley's conduct toward Misty are distinct from the charges related to the effects found during the illegal search.

The State then argues that Robinson testified she once saw Grumbley viewing child pornography on his computer, and that Robinson and Grumbley, Sr., testified that Grumbley kept guns in his room. This testimony was not somehow sufficient for the jury to convict Grumbley, as the State claims. Testimony by witnesses, coupled with introduction into evidence of the firearms and pornographic materials seized during a search, is sufficient to support convictions for possession of firearms or child sexually abusive materials. But exclusion of the physical evidence would create a reasonable probability that the result might be different. It defies logic for the State to suggest that the physical evidence of the alleged crimes was somehow immaterial to Grumbley's convictions. Because the State cannot point to any other record testimony

supporting Grumbley's convictions on the possession charges, we find that Grumbley was prejudiced by his counsel's errors.

Additionally, the Supreme Court's decision in *Kimmelman* further informs our analysis of the prejudice prong.  Under *Kimmelman*:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

477 U.S. at 375.  We find that Grumbley has also satisfied this enhanced burden.  As discussed, the State has pointed to no competent record evidence to support its claim that, absent the illegally seized effects, the other evidence presented at trial was sufficient to convict Grumbley of the three possession charges.  There is, therefore, reason to believe that the jury would not have convicted Grumbley of the possession charges absent introduction of the effects the State alleged he possessed.  A motion to suppress, when granted, would have single-handedly excluded the principal evidence in support of these three charges.  The motion to suppress likely would have been meritorious because of the illegality of Grumbley's arrest and the insufficiency of his consent to search.  Without this physical evidence, there is a reasonable probability that the outcome of the trial would have been different on these three charges.

## C.

Finally, although the State originally argued that, under the concurrent sentence doctrine, this Court should not review Grumbley's ineffective assistance of counsel claim, the State abandoned this contention at oral argument.  The concurrent sentence doctrine does not dispose of this case.  It is clear that granting Grumbley a writ of habeas corpus throws out his conviction for felony-firearm possession, for which he has served a two-year sentence preceding and

consecutive to the sentences on the other charges. It is less clear what becomes of Grumbley's remaining sentences.

As partially explained by the State at oral argument, Michigan applies prior record variables ("PRVs") as part of its sentencing guidelines.[6] PRVs are the seven factors Michigan uses to evaluate an offender's criminal history and determine the offender's PRV score. An offender's PRV score determines the offender's PRV level. An offender's PRV level is represented on the horizontal axis of each sentencing grid and is designated by capital letters from A to F, according to the offender's PRV point total. PRV level A represents the column with the least number of points and PRV level F represents the column with the highest number of points. Additionally, Michigan also applies offense variables ("OV") as part of its sentencing guidelines. OVs are the factors used to evaluate the seriousness of the offense and to determine the offender's OV score. An offender's OV score determines the offender's OV level. Depending on the specific sentencing grid, the OV levels are designated by roman numerals from I to VI along the vertical axis of the grid. The OV level's numeric designation increases as the offender's OV point total increases. The severity of an offender's penalty increases as both their OV level and PRV level increases. An offender's recommended minimum sentence range is indicated by the numeric range in the cell located at the intersection of the offender's "OV level" (vertical axis) and "PRV level" (horizontal axis) on the appropriate sentencing grid. Mich. Comp. Laws § 777.21(1)(c).

Of particular relevance here is PRV 7, which adds points to an offender's PRV score based on whether the offender has subsequent or concurrent felonies. Granting Grumbley a

---

[6]Michigan Judicial Institute, State of Michigan Sentencing Guidelines Manual (2014), *available at* http://courts.mi.gov/education/mji/publications/documents/sg-manual.pdf.

conditional writ of habeas corpus has the effect of vacating three of his convictions, on which he is serving concurrent sentences with other, non-vacated charges. Accordingly, this may affect the number of points he was assessed under PRV 7, which in turn may change which cell of Michigan's sentencing grid he falls into. It may be that, after vacating the three convictions, Grumbley's sentence remains 24 to 50 years. Alternatively, it may be that throwing out the three convictions results in a lowering of Grumbley's sentence on the remaining convictions.

Because the result is unclear on the record before us, we remand to the district court with instructions to grant Grumbley a conditional writ of habeas corpus vacating the three convictions and ordering the State of Michigan to recalculate Grumbley's sentence.

IV.

In summary, Grumbley's trial counsel should have filed a motion to suppress the evidence obtained from of the unlawful search, and that motion would have been meritorious and outcome-determinative of three of Grumbley's convictions. The state court, therefore, unreasonably applied *Strickland v. Washington* in finding that Grumbley was not denied effective assistance of counsel. For these reasons, we **REVERSE** the district court's denial of Grumbley's § 2254 petition on his ineffective assistance of trial counsel claim, and **REMAND** to the district court for entry of a conditional writ of habeas corpus and further proceedings consistent with this opinion.