RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0264p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

MAURICE EDWARD CARTER,

*Petitioner-Appellant*,

v.

MIKE PARRIS, Warden,

*Respondent-Appellee*.

No. 17-5498

───────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Cookeville.
No. 2:15-cv-00057—Kevin H. Sharp, District Judge.

Argued:  November 27, 2018

Decided and Filed:  December 10, 2018

Before:  THAPAR, BUSH, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Andrew Kim, GOODWIN PROCTER LLP, Washington, D.C., for Appellant.
Nicholas S. Bolduc, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville,
Tennessee, for Appellee.  **ON BRIEF:**  Andrew Kim, William M. Jay, GOODWIN PROCTER
LLP, Washington, D.C., for Appellant.  Nicholas S. Bolduc, OFFICE OF THE TENNESSEE
ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

THAPAR, Circuit Judge.  Maurice Carter pled guilty to a variety of sex crimes and
received a twenty-year prison sentence.  He now petitions for habeas relief.  Carter alleges his
attorneys were constitutionally ineffective for failing to make the best arguments for suppression

of key evidence. Yet even if Carter's counsel had made different arguments, the end result in his case would have remained the same—the evidence against Carter would have come in. Therefore, we affirm the district court and deny Carter's habeas petition.

I.

Near midnight on June 2, 2007, some residents of Smith County, Tennessee, called the sheriff's office complaining about a disturbance created by people gathered on county property at an old abandoned ferry landing. Although the road leading to the landing was closed, sheriff's deputies found a group of cars there and people near a campfire. Deputy Steve Babcock approached the car in which Maurice Carter was sitting with a minor, C.C. Babcock peered into the car window with his flashlight and saw "a bag containing green leafy substance next to . . . Carter's leg." R. 55-5, Pg. ID 1954. He also saw "a pack of rolling papers . . . spilled next" to Carter. *Id.* at 1955. Since he believed the bag contained marijuana, Babcock asked C.C. and Carter to get out of the car. Learning that C.C. was just thirteen and not old enough to drive, Babcock spoke with Carter, confirmed the car was his, and asked for consent to search the car. Carter said yes. And shortly thereafter, Babcock "found another bag of marijuana in the driver's side door." But he had to suspend searching further because Carter needed medical attention for what appeared to be an anxiety attack.

After an ambulance took a panting and sweating Carter to a hospital, Babcock resumed searching the car with two other deputies. The deputy searching the backseat saw what looked to be a "new English dictionary." *Id.* at 1965–66. But when he picked it up, he "shook it" and realized it was not a dictionary at all—it actually was a disguised lockbox. *Id.* at 1985. He took out his knife and broke the lock. Inside the lockbox, the deputy found sexually explicit photographs of C.C. and some DVDs. Law enforcement subsequently arrested Carter after his release from the hospital. He immediately consented to additional searches of his apartment and his computer, where more images of C.C. were found. Carter admitted to taking pictures of C.C. and knowingly exposing him to HIV. When C.C. began having girlfriends, Carter would use the pictures he took as blackmail to continue to force C.C. into sexual acts. Tennessee charged Carter with various counts of child rape, criminal exposure to HIV, sexual exploitation of a minor, and possession of marijuana.

Carter's defense attorneys focused their efforts on suppressing the evidence acquired in the vehicle search. The attorneys argued that the Tennessee deputies performed an unconstitutional search of Carter's vehicle and the lockbox. Since two Tennessee counties charged Carter with crimes, a joint hearing was held by two county judges. And both judges believed the vehicle search was constitutional and denied Carter's motion.

Carter pled guilty but reserved the right to appeal the search to the Tennessee Court of Criminal Appeals.[1] After sentencing, his attorneys appealed. The Tennessee Court of Criminal Appeals addressed some of Carter's search claims but decided not to reach others. As relevant here, the criminal appeals court declined to consider whether Carter had consented to the search of the lockbox because it was "beyond the scope of the [appeal] question."

Carter now petitions for habeas relief, arguing that he received ineffective assistance of counsel both at the trial court and at the criminal appeals court. He contends that his attorneys should have made different arguments to suppress the lockbox evidence. The district court denied relief, and we granted a certificate of appealability.

## II.

The Supreme Court has held that the Sixth Amendment guarantees criminal defendants the right to receive effective assistance of counsel. But proving ineffective assistance of counsel "is *never* an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (emphasis added). To show he was denied his right to effective assistance, Carter must demonstrate two things: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Carter argues that we should review his claim de novo rather than under the "highly deferential" habeas standard. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also* 28 U.S.C. § 2254(d). But we need not decide the proper standard of review because Carter cannot demonstrate prejudice under either standard.

*Trial counsel.* As Carter's ineffective-assistance-of-trial-counsel claim is based on a motion to suppress, our prejudice analysis "turn[s] on the viability" of that motion. *Arvelo v.*

---

[1]Tennessee allows criminal defendants who plead guilty to reserve certified issues for a limited appeal. *See* Tenn. R. Crim. P. 37(b)(2)(A); *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988).

*Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015); *accord Grumbley v. Burt*, 591 F. App'x 488, 500–01 (6th Cir. 2015).  He cannot show prejudice if the motion to suppress would have been denied regardless of his attorneys' arguments.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious . . . .").  Carter argues that his attorneys would have successfully suppressed the lockbox evidence had they made two arguments.  First, he says that his attorneys should have argued that Carter gave consent to search only the car but not the lockbox.  Thus, the deputies' search went beyond his consent.  And second, Carter claims that his attorneys should have argued that the inventory exception to the Fourth Amendment's warrant requirement did not apply to the lockbox.  The inventory exception allows police to use "standardized criteria" and inventory the contents of an impounded vehicle after its owner's arrest.  *Florida v. Wells*, 495 U.S. 1, 4–5 (1990).  Carter says it is "obvious" that the inventory exception did not apply to the lockbox because the police discovered it before his arrest.  He argues that had his attorneys made *these* arguments, then the lockbox photos would have been suppressed, and all the subsequent findings would have been inadmissible as "fruit[s] of the poisonous tree."  *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (quoting *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)).

But neither of Carter's preferred arguments would have made any difference.  Even if Carter did not consent to the search of his lockbox, *and* even if the inventory exception would not have applied to the evidence, the lockbox photos were still admissible.  Although the Fourth Amendment generally requires police to obtain a warrant before performing a search, law enforcement may "search a vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime."  *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) (internal quotation marks omitted).  *But see Morgan v. Fairfield Cty.*, 903 F.3d 553, 567–68 (6th Cir. 2018) (Thapar, J., concurring in part and dissenting in part) (suggesting an approach to the Fourth Amendment grounded in the Amendment's original meaning).  Here, Carter does not dispute that Deputy Babcock had probable cause to search Carter's vehicle as soon as he saw the bag of marijuana and rolling papers.  Seeing a small bag of marijuana (an illegal controlled substance in Tennessee) is enough to give officers probable cause to search a vehicle.  *See*

*United States v. Burnett*, 791 F.2d 64, 67 (6th Cir. 1986) ("Once the contraband was found, [the officer] had every right to search the passenger area of the car, the trunk, and any and all containers which might conceal contraband."); *see also United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) (stating that the odor of marijuana alone is sufficient for probable cause).

The fact that the lockbox was a locked container inside the car also makes no difference. The Supreme Court long ago dispensed with any categorical distinction between cars and the containers within cars. *See California v. Acevedo*, 500 U.S. 565, 570–72 (1991); *United States v. Ross*, 456 U.S. 798, 823 (1982). So long as "probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part* of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825 (emphasis added). Moreover, this is not a case where the probable cause to search the car failed to extend to the container in the car, i.e., the lockbox. For instance, if the deputies were looking for a stolen barrel of Pappy Van Winkle bourbon, they would not have had probable cause to search in a place that could clearly not fit a barrel, like a car's small glovebox.[2] But, in this case, the deputies were not looking for a bourbon barrel in the glovebox, nor were they searching for a surfboard in the center console. The deputies were searching for additional quantities of drugs or drug paraphernalia. There is no dispute that the deputies had probable cause to believe such items could have been in the lockbox, especially once the deputies realized it was a container that "could conceal the object of the search." *Id.*; *see also Wyoming v. Houghton*, 526 U.S. 295, 307 (1999).

Significantly, neither argument that Carter contends his attorneys should have made would have changed the result. First, the scope of Carter's consent—either broad or narrow— makes no difference. Deputy Babcock had probable cause to search the car with or without Carter's consent, and the fact that he asked for consent is of no moment. Deputies may have many reasons to ask for consent. *Cf. Kentucky v. King*, 563 U.S. 452, 466–67 (2011) ("[T]he police may want to ask an occupant of the premises for consent to search because doing so is simpler, faster, and less burdensome . . . ."). For instance, asking for consent may allow officers

---

[2]Pappy Van Winkle is an extremely rare bourbon, hard to find and hard to afford. And while much bourbon is understandably lost to the Angel's Share, Pappy seems to be often lost in robberies and heists—or what one may call the Thief's Share. *See* Mike Esterl, *Bourbon Heist: Who Stole the Pappy Van Winkle?*, Wall St. J. (Oct. 17, 2013).

to assure themselves that a subsequent search is constitutional—even if the consent is unnecessary. *See United States v. Hudson*, 405 F.3d 425, 441 (6th Cir. 2005) ("An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search."); *cf. King*, 563 U.S. at 467 ("Faulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution."). But asking for consent does not somehow forfeit the probable cause that had already developed for a search.

Second, the inventory argument that Carter suggests his attorneys should have made is similarly inapposite. *Cf. Burnett*, 791 F.2d at 67–68. Inventory searches occur after an arrest, but the deputies here lawfully searched Carter's vehicle *before* his arrest. So, as Carter himself points out, "it was obvious that" the inventory exception did not apply. Appellant Br. 2. But more to the point, whether the sheriff's deputies could have found the lockbox evidence later during an inventory search is unnecessary to consider, since the deputies lawfully found the lockbox before making any arrest. Therefore, even if Carter's attorneys had argued that the inventory exception did not apply, the result of the motion to suppress would not have changed. The vehicle exception applies regardless.

Carter makes one last argument in his reply brief. He suggests that this court should not rest its prejudice decision on a "fact-intensive alternative ground" upon which the Tennessee courts did not rely. *United States v. Duran-Salazar*, 307 F. App'x 209, 212 (10th Cir. 2009). But the facts of this case are not in dispute, and more facts are not needed. *See Kimmelman*, 477 U.S. at 390–91 (remanding for an evidentiary hearing when there was insufficient evidence to establish if an officer's search "came within one of the exceptions . . . to the Fourth Amendment's prohibition against warrantless searches"). Plus, the vehicle exception is not an alternative ground as Carter suggests: the Tennessee courts *did* rely on the vehicle exception to the Fourth Amendment's warrant requirement. True, the county judges at Carter's motion-to-suppress hearing suggested that a number of reasons justified the warrantless search of the lockbox. For instance, after the state's case-in-chief seeking to justify the search, the county judges opined that the search was justified by the consent and inventory exceptions. But after the judges made those statements, Carter's counsel put on witnesses, including Carter himself,

and again the lockbox was at issue.  At the end of this part of the hearing, one Tennessee county attorney again argued the lockbox search was constitutional.  He stated that "you can search in items that are located in the car . . . if you have reason to believe that it could contain what you were searching for, in this case, drugs," and the lockbox was "an item that was sufficient for that."  R. 55-5, Pg. ID 2023.  It was in direct response to this vehicle exception argument that the county judges made their final ruling.  As one county judge stated, "I think the law is pretty clear in searching a vehicle when something is in plain sight[,]" and opening the lockbox was "incident to this search."  *Id.* at 2024.  The other county judge added, "We would find likewise."  *Id*.  Therefore, the Tennessee courts found the lockbox evidence to fall within the vehicle exception.

Since the Tennessee sheriff's deputies had probable cause to search Carter's vehicle and found the lockbox evidence as part of that search, the evidence used against Carter was admissible—regardless of the arguments Carter now suggests his attorneys should have made.  Thus, Carter cannot show prejudice from his trial counsel's allegedly deficient representation.  *See Kimmelman*, 477 U.S. at 375.

*Appellate counsel*.  Carter also contends that his attorneys were constitutionally ineffective at the Tennessee Court of Criminal Appeals.  As part of his plea agreement, Carter preserved the search issue for appeal, and so his attorneys filed a certified question with the criminal appeals court.  Carter alleges that their certified question failed to allow the court to consider fully the vehicle search and the lockbox evidence.  Again, we turn to whether his attorneys' actions prejudiced him, which means "we assess the strength of the claim [that] appellate counsel failed to raise."  *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).  If there is no "reasonable probability that inclusion of the issue would have changed the result of the appeal," then habeas relief will not be granted.  *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).  And here, regardless of whether Carter's attorneys had more carefully crafted the certified question, the ultimate result of the appeal challenging the lockbox evidence would have been the same.  As discussed, the deputies had probable cause to search the vehicle, which extended to the lockbox.  No certified question would have changed that *even if* Carter's attorneys could have provided different, yet still unsuccessful, arguments on appeal.  *Burton v.*

*Renico*, 391 F.3d 764, 774 (6th Cir. 2004) ("Even if the unasserted claims are not frivolous, the requisite prejudice cannot be shown if the claims are found to lack merit.").

Carter contends that we should not analyze this case based on actual prejudice but instead should presume prejudice. In some cases, courts do make such a presumption for ineffective-assistance-of-appellate-counsel claims. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483–84 (2000). For example, prejudice may be presumed if an attorney fails to file a notice of appeal, *see id*. at 486, or if an attorney fails to file an appellate brief, *Hardaway v. Robinson*, 655 F.3d 445, 449 (6th Cir. 2011). The lodestar that guides courts to presume prejudice is whether the attorney's actions effectively "deprived [the defendant] of the appellate proceeding altogether." *Flores-Ortega*, 528 U.S. at 483. But that is not what happened in Carter's case. Carter's attorneys ensured that his plea deal allowed for an appeal to challenge the search. And then they crafted their appeal, which, in their words, was "specific" but not "too narrow." R. 55-25, Pg. ID 2654. The Tennessee Court of Criminal Appeals ultimately disagreed, but it did not disagree in such a way that rendered Carter's appeal "entirely nonexistent." *Flores-Ortega*, 528 U.S. at 484. Instead, the criminal appeals court reviewed the briefing and addressed many of Carter's arguments in a fourteen-page opinion. Just because the court summarily dismissed the arguments that Carter now thinks are winners does not mean his counsel's certified question "deprived [him] of the appellate proceeding altogether." *Id.* at 483. He had a proceeding. It just did not go his way.

Therefore, since the result of the appeal would not have been different, Carter cannot show prejudice from his appellate attorneys' representation.

*            *            *

As Carter cannot demonstrate prejudice at either the trial or appellate stages of his state proceedings, he is unable to prove he received ineffective assistance of counsel. We affirm.